IDA M. MAIR v. EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES.[1]

March 1, 1935.

No. 30,223.

[1]Reported in 259 N. W. 60.

*Cobb, Hoke, Benson, Krause & Faegre* and *George D. McClintock,* for appellant.

*Kellogg, Morgan, Chase, Carter & Headley* and *David W. Raudenbush,* for respondent.

LORING, JUSTICE.

In an action upon the double indemnity provisions of a life insurance policy the defendant had a directed verdict, and the case comes here upon the plaintiff's appeal from the judgment entered thereon. The question presented by this appeal is whether death, caused by the lodgment in the ureter of a stone which, by a fall had been dislodged from the kidney, was accidental within the provisions of a policy which calls for double indemnity in case of death which results from external, violent, and purely accidental means and is not caused directly or indirectly by disease or physical infirmity.

June 10, 1929, defendant insured the life of Matthew Mair for $2,500 with a provision for double indemnity in case of death by accident. Plaintiff was the beneficiary. Mair paid all premiums and died March 4, 1932, under circumstances which plaintiff claims were accidental. Defendant paid the face of the policy but disputes the double indemnity.

The insured at the time of his death was 55 years of age. He was about six feet in height and weighed approximately 200 pounds. He was unusually active and apparently enjoyed the very best of health up to February 2, 1932, when he slipped and fell as he was getting out of his automobile. He had a bruised spot over one kidney, and thereafter he suffered the excruciating pain which usually accompanies the presence of a kidney stone in the ureter. The stone obstructed the tube of the ureter, causing hydronephritis, which was followed by pyonephritis and then by hypostatic pneumonia, which caused the death of the insured on the 4th of March. All the medical witnesses agreed that if there had been no kidney stone the fall would not have killed the insured. The trial court took the view that physical infirmity contributed directly or indirectly to death and directed a verdict for the defendant.

Naturally the solution of the question presented lies largely in the opinion of experts. There is very little conflict in the opinions expressed by the doctors called by the respective parties. No one appears to have discovered what causes stones to form in the kidneys, but all agree that they are built up layer upon layer by elements in the secretion of those organs. Stones are different in shape and size according to the place where they are formed and the length of time in which they have been built up. The plaintiff's doctors regarded the stone in and of itself as harmless to the health of the insured unless it should be dislodged and pass into the ureter. If it passed through the ureter and into the bladder it would again be harmless. It was harmless in the kidney as long as it was dormant or passive. In some cases a stone may irritate the kidney. The size of the stone which caused the death of the insured was 1½x.6x.6 centimeters, and it had certain prongs or projections which, in the opinion of the plaintiff's doctors, were likely to prevent its dislodgment from the part of the kidney in which it was being formed unless there was an abnormal abdominal pressure such as the blow which the insured received when he fell. It was their opinion that the stone was dislodged by the fall and that it entered but would not pass through the ureter and thus caused the insured's death in the manner above stated.

The defendant relies largely upon Kerns v. Aetna L. Ins. Co. 291 F. (C. C. A.) 289, and some other cases of like holding. In that case the insured had swallowed a small piece of metal which lodged in the oesophagus and had become incapsulated therein so as to be harmless to the health of the insured. Later he slipped and fell and thus dislodged the metal from the insulation, and death ensued. The court denied recovery under his accident policy, stating that the presence of the metal had fallen into the category of a preëxisting disease or bodily infirmity as far as the contract was concerned.

In support of plaintiff's contention that the death was due solely to accident, she cites the case of Silverstein v. Metropolitan L. Ins. Co. 254 N. Y. 81, 171 N. E. 914, 915. In that case the insured was afflicted with a duodenal ulcer. The ulcer weakened the wall

of the duodenum, and when violence was applied to the abdomen a perforation occurred and peritonitis set in, which resulted in death.

The court there allowed a recovery and held that [254 N. Y. 84]:

"The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men.  *  *  *  Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract.  *  *  *  A policy of insurance is not accepted with the thought that its coverage should be restricted to an Apollo or a Hercules."

Although the ulcer weakened the duodenal wall and death would not have resulted from the accident without the ulcer, the court said in substance that when the abnormality was so remote in its potential mischief that common speech would call it not disease or infirmity but at most a predisposing tendency, the fact that it started and was made operative by violence so that death resulted did not prevent the violence from being considered the sole cause of the death.

We are inclined to follow the Silverstein case and the theory which it expounds rather than the Kerns case, the reasoning of which does not persuade us. In the case at bar we have a passive or dormant kidney stone which under the evidence was wholly harmless unless dislodged. Before the accident the insured was in perfect health. There had been no apparent symptoms of irritation of the kidney. While stones are probably dislodged by violence in a minority of cases, under the evidence in this case the jury might have found that the dislodgment was not reasonably likely unless abnormal pressure was exerted upon the abdomen; that the peculiarities of the stone itself were such as to make its dislodgment unlikely without abnormal pressure or violence. It was practically conceded by all of the doctors that the dislodgment of the stone and the obstruction of the ureter caused the death of the insured. We therefore think the trial court should have submitted the case to the jury.

We have no difficulty in distinguishing this case and those like the Silverstein case from cases where the insured was suffering from chronic disease such as diabetes or nephritis, which impairs the health and weakens the resistance so that when aggravated by violence the disease effects death. The difference lies in that in one case the disease is merely aggravated by the violence, while in the other it is in its fatal aspects entirely set in motion by the violence. Applied to the case at bar, we may justly say that the jury might find that the violence was the sole cause.

The judgment is reversed and the case remanded for a new trial.

