CLARA E. BOUCHARD

*vs.*

PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Penobscot.    Opinion, October 11, 1937.

*Stanley Needham,*
*John Needham,* for plaintiff.
*James E. Mitchell,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

Hudson, J. On report. The plaintiff, widow of the insured, J. Peter Bouchard, and beneficiary under a policy of insurance issued to him by the defendant company on November 5, 1926, sues in assumpsit to recover additional indemnity on account of his alleged accidental death.

The facts, undisputed, may be stated briefly. Mr. Bouchard ran a restaurant in Orono. One Burton, somewhat under the influence of liquor and making some disturbance while therein, he gently ejected. An altercation followed just outside the door. Blows were exchanged. The proprietor returned to the restaurant very pale, in pain, and physically exhausted. Taken almost immediately to a doctor's office, he died in the waiting room before receiving treatment.

The burden of proof is upon the plaintiff to show that the death resulted from one or more of the causes enumerated by the terms of the contract as establishing liability of the defendant. *Leland* v. *Order of United Commercial Travelers of America*, 233 Mass., 558, 565, 124 N. E., 517, 520.

The pertinent language of the policy provides for payment of additional indemnity "upon receipt of due proof that the death of the insured occurred . . . as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, . . ."; and denies it, if death results "directly or indirectly from bodily or mental infirmity or disease in any form."

The language quoted constituted the promise of the defendant. It must do what it promised to do and no more.

Liability is denied on two grounds; the first contention being, that the death did not occur as a result of bodily injuries effected through accidental means; and the second, that if so, it did not occur as a result, directly and independently of all other causes, of bodily injuries effected *solely* through accidental means.

The first contention need not be considered, for assuming without deciding that the death was due to accidental means, the sustaining of the second, as we must, defeats recovery.

The defendant introduced no evidence, satisfied to have the case determined upon the plaintiff's testimony. Two reputable physi-

cians, one an acknowledged expert and the other a general practitioner, both having participated in an autopsy performed the day following the death, testified as to its cause. The expert (and with him the general practitioner agreed) said that it was due to "cardiac failure — heart failure; congestive heart failure . . . brought on by a combination of causes . . . ." The autopsy disclosed fatty degeneration of the heart and an advanced case of arteriosclerosis, the coronary arteries being badly sclerosed with some calcareous deposits. In answer to the question, whether "the death was brought about by the sudden strenuous exertion on top of the weakened heart condition," the doctor replied: "Yes, sir. That is my opinion." He said: "It needed the extra exertion and extra load and excitement too; *it took the combination of the two to produce the results*." He explained: "The heart is called upon to do more work than it was capable of doing, that is, due to a diseased condition. First, the circulatory system slows down. . . . Of course, when it slows down, one side of the heart carries blood through the body and the other side carries the blood through the lungs; if the left side of the heart, which carries the blood through the body, can not carry on that function and take the blood from the lungs, the blood backs up in the lungs and you get practically a drowning in their own blood, so to speak; the lungs just fill right up. . . . As soon as the circulation slows down, clots are likely to form; clots usually form; and clots were found in both sides of this man's heart."

Suffocation took place because the heart, due to disease, was unable to function properly. Its condition alone probably would not have caused his death on that day, nor would the blows alone, but both acting in concert killed him. The plaintiff's own witnesses so testified and there was no evidence to the contrary. The contract expressly denied liability for a death so caused, though accidental.

It is argued by plaintiff's counsel that the encounter was the proximate cause; but in this action, founded on this specific promise, it is not a question what was the proximate cause of the deceased's death. The contract itself clearly creates liability only when the death results from bodily injuries effected *solely* through accidental means.

Quite true it is that very often different forces and conditions

concur in producing a result and that it is not necessary to go farther back in the line of causation than to find the active, efficient, procuring cause known in law as the proximate cause. In the instant case, the blows might well be said to be the proximate cause; but, nevertheless, that does not permit recovery under the language of this policy, that cause, although proximate, being accompanied by another contributing cause, the diseased heart.

In *Commercial Traveler's Mutual Accident Assn. of America* v. *Fulton,* 79 Fed., 423, 430, the court said:

"As was said before, under this policy, and upon the facts in proof, there was no question of proximate or remote cause, but only whether there were two co-operating causes, or only a sole cause." Also see *Crandall* v. *Continental Casualty Co.,* 179 Ill., App. 330, 345.

To the same effect is *Carr* v. *Pacific Mutual Life Ins. Co.,* 100 Mo., App. 602, 75 S. W., 180, 182, in which the court said:

"But the question presented under the terms of the policy is not whether the plaintiff's sickness was the proximate and immediate cause of his injury, but whether the injury was directly or indirectly caused by his disease. . . . It is contended by the respondent that such a construction would practically nullify an accident policy, besides being contrary to all reason. There is some force in this position but what are the courts to do in such cases? We can only construe the contract as we find it. The parties had a right to so contract, as there is no law prohibiting such, and it does not appear to be *ultra vires*. Until the Legislature places a limit upon the right of life insurance companies to make contracts limiting their liability to the minimum the courts are bound to recognize them as they find them."

So when the death is attributable directly or indirectly to "disease in any form" not occasioned by the accident, recovery may not be had on a policy containing this particular promise, even though the accident is the active, efficient, procuring cause.

*McGlinchey et al.* v. *Fidelity and Casualty Co.*, 80 Me., 251, 14 A., 13, is relied upon, but it is clearly inapplicable, for it does not appear therein that there was any pre-existing disease that in combination with the accident caused the death. Again, while the policy in that case stipulated that it must be proved that the death was caused "by bodily injuries effected through external, violent and accidental means" it did not contain the very limitative language of this policy, viz., "directly and independently of all other causes of bodily injuries, effected *solely* through . . . accidental means" and the additional words in the proviso, viz., "directly or indirectly from bodily or mental infirmity or *disease in any form.*"

The other Maine case cited by plaintiff's counsel, *Thompson* v. *Columbian National Life Insurance Co.*, 114 Me., 1, 95 A., 229, likewise is distinguishable, for in it the accident was the cause of the disease that resulted in death.

We have found no apt Maine decision, but other courts, both State and Federal, have dealt with the point in issue. In *Leland* v. *United Commercial Travelers of America*, supra, Chief Justice Rugg, having cited the case of *Freeman* v. *Mercantile Mutual Accident Assn.*, 156 Mass., 351, 30 N. E., 1013, and other cases, said:

> "The application of that principle of law to the case at bar is that, if the injured was suffering from a disease, which was accelerated and aggravated by the accident so as to be a cause cooperating with it to produce the fatal end, then there can be no recovery."

It was there held that there could be no recovery because the deceased was suffering from disease which actively cooperated with the fall in causing the death.

In *Stanton* v. *Travelers' Insurance Co.*, 83 Conn., 708, 78 A., 317, the Connecticut court stated:

> ". . . The consensus of opinion is that, if an injury and an existing bodily disease or infirmity concur and cooperate to that end, no liability exists. If, however, the disease results from the injury, the company is liable, though both cooperate in causing the death. . . . And even in cases where the insured is afflicted at the time of the accident with some bodily disease,

if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability will exist."

Also see *Thomas* v. *Fidelity and Casualty Co. of New York*, 106 Md., 299, 67 A., 259 ; *Modern Woodmen Accident Assn.* v. *Shryock*, 54 Neb., 250, 74 N. W., 607 ; *Preferred Accident Insurance Co.* v. *Patterson*, 213 Fed., 595 ; *Runyon* v. *Commonwealth Casualty Co.*, 109 N. J. Law., 238, 160 A., 402 ; *Phillips* v. *Travelers' Insurance Co. of Hartford, Conn.*, 288 Mo., 175, 231 S. W., 947 ; *Vernon* v. *Iowa State Traveling Men's Assn.*, 158 Iowa, 597, 138 N. W., 696 ; *Fetter et al.* v. *Fidelity and Casualty Co. of New York*, 174 Mo., 256, 73 S. W., 592.

*Penn* v. *Standard Life Insurance Co.*, 160 S. C., 399, 76 S. E., 262, is a leading case. The Court deduces from the decided cases three rules, viz:

1. "When an accident caused a diseased condition, which together with the accident resulted in the injury or death complained of, the accident alone is to be considered the cause of the injury or death."

2. "When at the time of the accident the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered as the sole cause."

3. "When at the time of the accident there was an existing disease, which, cooperating with the accident, resulted in the injury or death, the accident can not be considered as the sole cause or as the cause independent of all other causes."

The case at bar comes clearly within the third rule.

The insured contracted for a limited coverage. The plaintiff's claim is not within it.

Liability not having been established, the entry, as stipulated in the report, must be,

*Judgment for defendant.*