## RUTH A. WOLFANGEL v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

February 28, 1941.

No. 32,609.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *Edwin B. Baer,* for appellant.

*Alfred R. Sundberg,* for respondent.

HILTON, JUSTICE.

After an adverse verdict in a suit for accidental death benefits, the Prudential Insurance Company appeals.

On March 9, 1939, the date of the accident, Elmer L. G. Wolfangel, the deceased insured, was 38 years old, apparently in good health, of ruddy complexion and untiring vigor, operating, as he had for 11 years, a large St. Paul milk route for the Minnesota Milk Company. In running through an ice-covered alley that day, Wolfangel slipped and in the fall injured the left hip region. After the fall he arose and resumed his route, though favoring a limp in his left leg. Next day, with assistance, Wolfangel covered

[1]Reported in 296 N. W. 576.

his route and that evening consulted a physician, who discovered no external evidence of injury but prescribed heat treatment. Thereafter, Wolfangel walked with increasing difficulty. On March 13, in addition to weakness in the left leg, examination revealed that the normal nerve reflexes in knee and foot were absent, indicating to the attending physician a disturbance in the central nervous system. Upon being removed to the hospital, no breaks or bone injury in the pelvic area were disclosed by X-rays, but heat treatments were continued. By March 15, when a blood Wassermann test was taken, the left leg was completely paralyzed. The Wassermann report, confirmed on March 21 by the results of the spinal fluid test, indicated a four plus positive syphilitic condition, the strongest possible. A colloidal gold curve test revealed a paretic curve, an indication of general paralysis and involvement of the central nervous system, syphilitic in origin. On March 21, 1939, 12 days after the fall, Wolfangel died from a rapidly ascending paralysis finally involving the respiratory system.

Under the policies in question, accidental death benefits were payable upon receipt of proof by Prudential that Wolfangel's death occurred "as a result, directly and independently of all other causes, of bodily injuries, effected solely through external violent and accidental causes" and did not result "directly or indirectly, from disease in any form." The jury was so instructed. Incumbent upon plaintiff, as beneficiary, was proof that Wolfangel's death resulted solely from accidental causes. Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557.

Prudential vigorously insists that since the evidence conclusively demonstrates that death resulted directly or indirectly from a disease, syphilis, its motion for a directed verdict should have been granted, and the submission to the jury of the question whether Wolfangel died solely from accidental causes was error. Also, error in denying its motion for a new trial is asserted.

Plaintiff was successful in reaching the jury on medical testimony supporting a theory that Wolfangel, in falling on March 9, 1939, suffered a concussion of the spinal cord permitting an in-

vasion of nerve tissue by the syphilitic organism so as to produce the appearance of symptoms from which death resulted. The problem then is whether, under the most favorable interpretation of plaintiff's evidence, there was a jury issue on the question whether Wolfangel's death resulted from accidental causes and not from disease.

While this contract of insurance must be construed and applied as written, any construction so unduly restrictive that it would defeat the ends of accident insurance must be avoided. It is not to be supposed that a contract like this is limited in coverage only to those entirely healthy and free from all physical defects and deficiencies. Neither may it be said that coverage exists wherever accident has coöperated with physical defect or deficiency to produce death. White v. Standard L. & A. Ins. Co. 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83. It will be seen that the problem is largely one of causation.

Wherever a person is in any respect below normal in health or bodily resistance, a strict application of the doctrine that the accident must be the sole and independent cause of the death would probably always require a decision for the insurer, since it is seldom, from the medical point of view, that one cause is solely responsible for death. Silverstein v. Metropolitan L. Ins. Co. 254 N. Y. 81, 171 N. E. 914, 72 A. L. R. 867. This consideration has persuaded several courts to distinguish between legal and medical causes, and recovery is allowed wherever the accident and its effects, acting upon an imperfect state of health, can be said to have been the proximate cause of death. Equitable L. Assur. Society v. Gratiot, 45 Wyo. 1, 14 P. (2d) 438, 82 A. L. R. 1397; Driskell v. U. S. Health & Acc. Ins. Co. 117 Mo. App. 362, 93 S. W. 880; Wheeler v. Fidelity & Cas. Co. 298 Mo. 619, 251 S. W. 924; Continental Cas. Co. v. Lloyd, 165 Ind. 52, 73 N. E. 824; cf. Fidelity & Cas. Co. v. Meyer, 106 Ark. 91, 152 S. W. 995, 44 L.R.A. (N.S.) 493; Benefit Assn. v. Armbruster, 217 Ala. 282, 116 So. 164; Id. 224 Ala. 302, 140 So. 356.

There can be little doubt that Wolfangel would not have died from the effects of the fall had there been no syphilis in his system. However, before the fall, seemingly, he was a normal, healthy, vigorous individual, neither manifesting nor experiencing the existence of any bodily infirmity. Twelve days after the fall he was dead, ravaged by the effects of a very treacherous disease. Notwithstanding complete agreement among all the medical experts that prior to the accident tests would have disclosed the presence of syphilis in the body, yet it was the view of Dr. Kamman, plaintiff's expert, that the fall precipitated a violently destructive process, not usually present in cases where there has been no injury, which effected a transition from the asymptomatic stage, in which the sufferer has no symptoms, into the symptomatic stage, into which, without the fall, Wolfangel might never have gone. A lengthy review of the evidence would not disclose that Wolfangel in absence of the fall was a doomed man. There is testimony that despite its presence in the body syphilis may cure itself without treatment. Indeed, a positive Wassermann reaction has been known to become negative. But for the fall, no one knows the result. The disease was latent, not manifest, and whether it would have become manifest in absence of the fall is conjectural. The evidence for the plaintiff is positive that because of the fall death did result. In the minds of the jury this evidence was not discredited nor successfully contradicted. We cannot now say as matter of law that the infirmity was merely aggravated by the fall and was not in its fatal aspects entirely set in motion by the accident. Mair v. Equitable L. Assur. Society, 193 Minn. 565, 259 N. W. 60.

It must be clear from this review of the evidence that its great preponderance was not, as urged by Prudential, against the verdict. *Cf.* Martin v. Courtney, 75 Minn. 255, 77 N. W. 813. As pointed out by the trial court, any error which existed in overruling defendant's objection to a reference by Dr. Kamman to a medical textbook was harmless in absence of a motion to strike the reference to textbooks in the previous answer. The order

denying the motion for judgment notwithstanding the verdict or a new trial must be affirmed.

Affirmed.

STONE, JUSTICE (dissenting).

The major control of this decision is that "under the policies in question accidental death benefits were payable upon receipt of proof by Prudential that Wolfangel's death occurred 'as a result, directly and independently of all other causes, of bodily injuries, effected solely through external violent and accidental causes' and did not result 'directly or indirectly, from disease in any form.'" Subsidiarily it is that "a strict application of the doctrine that the accident must be the sole and independent cause of the death would probably always require a decision for the insurer." Recognizing this consideration and adopting a test of proximate causation enunciated by other courts, the majority opinion is that, because "but for the fall, no one knows the result," there was a jury issue on the question of whether Wolfangel's death resulted "solely from accidental causes and not from disease."

Beyond dispute is the fact that death would not have resulted but for the ravaging (and for this case, fatal) presence of this "very treacherous disease." One expert for plaintiff and both for defendant agree that the fall was a "minor thing" and played no part in the death. Dr. Kamman, another of plaintiff's experts, averred that death resulted "from a rapidly ascending syphilis of his spinal cord which was precipitated by * * * the injury." Conceding that and admitting that in some instances application of the test of proximate causation is correct for the purposes explained, yet a finding that the fall was a sole and independent cause of death is but judicial annulment of a plain and legitimate condition of the contract.

In Mair v. Equitable L. Assur. Society, 193 Minn. 565, 568, 259 N. W. 60, 61, the existing deficiency was a "dormant kidney stone * * * wholly harmless unless dislodged," as it was by the accident. Therein, we followed the theory of Silverstein v. Metropolitan L. Ins. Co. 254 N. Y. 81, 171 N. E. 914, and, paraphrasing,

submitted that "when the abnormality was so remote in its potential mischief that common speech would call it not disease or infirmity but at most a predisposing [but latent] tendency, the fact that it started and was made operative by violence so that death resulted did not prevent the violence from being considered the sole cause of the death." Taking plaintiff's evidence in its most favorable light, as we must on this appeal, it is impossible for me to accede to the view that Wolfangel's condition was not a disease but "at most a predisposing tendency." It is admitted that immediately and probably for some time before the fall tests would have shown the disease rampant in his body though no visible symptoms were manifest. Dr. Kamman's testimony is that it is "speculative" whether Wolfangel would ever have developed symptoms. The other testimony is that he would.

In the Mair case the defect was quiescent; its only contribution was to make the insured more vulnerable to trauma. It had not, as here, filled his anatomy, particularly his blood stream, with myriads of active agents of destruction such as spirochaeta. For Wolfangel, they were an active, predominant, and direct cause of death.

Let the rule of this case become methodic, and there will be no similar case wherein recovery can be denied as matter of law. However plain and direct may be the contribution of disease as cause of death, it must yet be said that a question of fact remains as to whether it made any contribution. I cannot go to that extreme and thereby join in abdication of the judicial function and duty of applying contracts as the parties make them. It is a minor consideration that the result will be for many cases the conversion of accident into life insurance.