## SARAH PLOTKE v. METROPOLITAN LIFE INSURANCE COMPANY.[1]

No. 32,889.

June 27, 1941.

*Jesse B. Calmenson,* for appellant.

*Snyder, Gale & Richards,* for respondent.

[1]Reported in 299 N. W. 216.

HOLT, JUSTICE.

Action to recover on two life insurance policies issued by defendant upon the life of plaintiff's husband. Each policy was for $1,000, and contained a supplementary contract to pay an additional sum of $1,000 "upon receipt, at the Home Office of the Company in the City of New York, of due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, provided * * * that * * * death shall not have been * * * caused by or contributed to, directly or indirectly, or wholly or partly, by disease, or by bodily or mental infirmity."

The insured died January 11, 1940, while the policies were in effect. Plaintiff, the beneficiary named in the policies, furnished proofs of death and sued to recover $2,000 on each policy, claiming that insured's death was accidental under the provisions above quoted, but admitted having received $1,504.88 from defendant, the insurer. Defendant answered and denied that the death of the insured was from accidental cause within the terms and conditions of the policies, and further alleged as a defense and justification for the payment of $1,504.88 instead of $2,000 that the insured in his application for the policies had misstated his true age, whereby the premiums paid had been that much less. The reply made that an issue. At the trial it was conceded that the insured had misstated his age. The extent of the misstatement was submitted to the jury, and the verdict for plaintiff for $252.20 is found no fault with by either party.

The court at the conclusion of the testimony held that there was not sufficient evidence to submit the issue of recovery for accidental death. Plaintiff moved for judgment in the sum of $1,724, in addition to the verdict, or a new trial. From the order denying the motion she appeals.

The assignments of error go to the refusal to submit to the jury the issue of accidental death. The evidence adduced may be thus

briefly stated: Plaintiff testified that she married William Plotke, the insured, in 1910. He was a tailor by trade and worked for Gordon & Ferguson, in St. Paul, for 27 or 28 years, up to the time of his death. He had not had any sickness with the exception of the flu some years ago, and some "seasonal" stomach trouble which only temporarily interfered with his work. A few minutes after seven o'clock a. m. on January 11, 1940, he said good-bye to his wife, being in apparent good health and spirit, and went out to start his Whippet car, parked at the curb in front of his home. The starter failed to function, and he was seen going to the front of the car with the crank handle, and two witnesses saw him in the act of turning the crank and falling. When reached by the nearest witness he was apparently dead. Several persons saw him immediately after the fall. It appears that the witness Thompson, called by defendant, and Reynolds, called by plaintiff, were the only ones who observed him falling. Both were wholly disinterested, observing, intelligent, and candid. Thompson testified that he was walking on the sidewalk toward Plotke, and when he first noticed him "he was just straightening up and he appeared to step back with his right foot just a little bit and continued falling to the left. * * * Well, he just seemed to keep on falling slowly to the left; he didn't fall very fast." Thompson was about 25 feet away and went at once to Plotke's aid. He said he found him in an unnatural position, raised his head and laid it on the curb with his hat underneath, took the lower plate of his teeth out of his mouth and laid it on his chest, tried to rub his wrists, and make it easy for him. He thought he might have moved him about six inches. The witness Reynolds, who was sitting in a bay window on the second floor of his apartment, having a clear view of Plotke and his car, testified that he saw Plotke in the act of cranking the car, and "I saw him slip and I didn't see him get up so I slipped on my overcoat, went down there, and he was lying in front of his car; his false teeth was laying on his chest. * * * Well, he was cranking the car; * * * and it

seemed his body went forward and feet went forward at the same time and then he fell backwards."

It appears that this witness erroneously concluded that the severity of the fall had lodged his false teeth on his chest. Neither of these two witnesses noticed any bruise on his face. There were other witnesses who appeared immediately after Plotke fell, some of whom said they noticed a bruise on the left cheekbone. The embalmer who prepared the body for burial testified that there was no bruise or abrasion on the body or face of Plotke. There was no autopsy. The son of Plotke, a doctor practicing at Little Falls, was the only medical witness, and testified that the previous Christmas he had examined his father's heart with a stethoscope and found no evidence of enlargement or leakage or any changes in the tones, or impairment of the rhythm thereof; that while living at home he had occasionally treated his father for "seasonal" stomach trouble, which readily yielded to treatment. After his father's death he saw the body at the undertaker's room and testified to observing a bruise on his left cheekbone the size of a silver dollar. We think this testimony is entirely lacking in substance upon which to predicate a recovery for death as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent, and accidental means, not caused by or contributed to, directly or indirectly, or wholly or partly by disease, or by bodily or mental infirmity. It would be a mere guess or speculation for any trier of facts to say that Plotke's death came within the coverage of these policies. It is common knowledge that persons while engaged in their usual work, or while walking or even while in bed resting, collapse and die, and when there are no evidences of death-producing injuries on the body, no one can determine that death resulted from external, accidental violence and was not contributed to by disease.

The law appears to be well settled that the burden of proof is on the beneficiary, when recovery is sought upon an insurance policy of the sort here involved, to establish that the death of the

insured comes within the terms and conditions of the coverage clauses referred to. Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557, where prior cases are cited and fully discussed. To these we add Wolfangel v. Prudential Ins. Co. 209 Minn. 439, 296 N. W. 576.

Plaintiff contends that no direct testimony, or medical opinion, examination, or autopsy is needed to prove the cause of death. True, there may be instances where the dead body discloses the cause so that a jury would need no other proof. But that is not the case here. There is nothing to show that the superficial abrasion on the cheekbone was not produced after the death-dealing cause had laid hold of him as his collapsing body hit the ground. State ex rel. Jefferson v. District Court, 138 Minn. 334, 164 N. W. 1012, and McGlinchey v. Fidelity & Cas. Co. 80 Me. 251, 14 A. 13, 6 A. S. R. 190, are cited and relied on by plaintiff. The Jefferson case was a workman's compensation case where compensation followed upon proof that the accidental injuries (several ribs were fractured) contributed to the death. There was an abundance of medical testimony *pro* and *con*. The McGlinchey case was on a life insurance policy for double indemnity, tried to the court. The policy did not contain the conditions found in the policies here involved, and is sufficiently distinguished in Bouchard v. Prudential Ins. Co. 135 Me. 238, 242, 194 A. 405, where attention is called to the fact that McGlinchey's policy did not contain the limitative language of the Bouchard policy, *viz.,* "directly and independently of all other causes of bodily injuries, effected solely through * * * accidental means" and not "directly or indirectly from bodily or mental infirmity or disease." And it was there held that judgment was properly granted the defendant because plaintiff had failed to carry the burden of proof. The plaintiff also cites[2] New York L. Ins. Co. v. Gamer, 303 U. S. 161, 58 S. Ct. 500, 82 L. ed. 726, 114 A. L. R. 1218, where the death was caused by shooting, and the defense against double indemnity was

---

[2]See opinion on application for reargument, *infra* p. 547.

suicide, excepted from coverage. There is nothing in that decision in aid of plaintiff's argument; neither is there in Warbende v. Prudential Ins. Co. (7 Cir.) 97 F. (2d) 749, 117 A. L. R. 760, also cited, where likewise the determinative issue was suicide, not raised in the instant case in any form. Plaintiff also relies on Clay v. New York L. Ins. Co. 183 Minn. 275, 236 N. W. 305; Milliren v. Federal L. Ins. Co. 186 Minn. 115, 242 N. W. 546; Cavallero v. Travelers Ins. Co. 197 Minn. 417, 267 N. W. 370; Wolfangel v. Prudential Ins. Co. 209 Minn. 439, 296 N. W. 576. But in each there was medical testimony as to the cause of death in addition to circumstantial evidence. We are of the opinion that the case at bar is so nearly like Gidlund v. Benefit Assn. of Ry. Employees, 210 Minn. 176, 297 N. W. 710, that it should be ruled thereby. Then there was no evidence as to the length of time Plotke was engaged in cranking or whether he exerted himself more than ordinarily.

Error is assigned on rulings sustaining objections to five questions asking for the opinion of Dr. Plotke as to the cause of death. The doctor had testified that when home at the Christmas holidays he examined his father's heart with a stethoscope, took his blood pressure, and found no heart impairment; and also that he had not seen him since then until he saw his body in the undertaker's parlor the evening of the day after his death; and that he then made no examination of the body other than observing the bruise on the left cheekbone. The best framed of these five questions was: "On the assumption, or assuming rather, Doctor, that your father had left the house that morning to go to work after having taken care of his usual chores around the house, such as fixing the furnace, putting coal on, making breakfast, going out to start his car, and having been in the position of cranking his car, straightened out and slipped, his feet being thrown forward and falling to the ground and striking himself on the ground; and from your past knowledge of his medical history to which you have testified and from what you witnessed at the

undertaking parlor as to the abrasion and marks on his face, can you state what in your opinion was the cause of his death?" Having answered that he had an opinion, the objection was sustained that there was no foundation laid for the expression of an opinion. The court then stated: "Well, I think the doctor can state what examination he made and what he found and whether he found anything, any condition that would result in death." After some further discussion between court and counsel, this question was asked: "From your examinations, Doctor, both prior to the death and at the undertaking parlor that evening, did you form any opinion as to whether or not the death resulted from a heart disease?" To this question counsel for defendant made the same objection, but stated that he would make no objection "if you wish to ask him if he thinks the abrasion on the cheek was the cause of death." The next question was: "Will you state whether or not in your opinion the abrasion on the cheek and the condition you found there was the cause of your father's death?" The objection was that there was included in the question "the condition you found there," which had not been revealed. The objection was sustained. There was no offer of proof or further effort to comply with the suggestions of court or counsel. We think it clearly is apparent that this doctor's opinion would not have been of any aid to a jury. His mere observation of the bruise on the cheek of the dead body and his cursory examination at Christmas time would give his opinion no better basis than a guess as to whether or not the death was accidental and not caused or contributed to by disease or infirmity.

The order is affirmed.

UPON APPLICATION FOR REARGUMENT.

On July 18, 1941, the following opinion was filed:

HOLT, JUSTICE.

Through mistake the opinion filed stated that plaintiff cites New York L. Ins. Co. v. Gamer, 303 U. S. 161. The case was cited by

defendant. In other respects the decision must stand, and a re-hearing is denied.