Arthur C. WESSEL and Florence E. Wessel, Appellants,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.

No. 18197.

United States Court of Appeals
Eighth Circuit.

June 10, 1966.

Elton A. Kuderer, of Erickson, Zierke, Kuderer & Utermarck, Fairmont, Minn., for appellants.

Richard W. Johnson, of Neville, Johnson & Thompson, Minneapolis, Minn., for appellee.

Before MATTHES, GIBSON, Circuit Judges, and HUNTER, District Judge.

GIBSON, Circuit Judge.

This appeal is from the United States District Court, District of Minnesota,

wherein the motion by defendant for judgment notwithstanding the verdict was granted subsequent to a jury verdict in favor of plaintiffs in the amount of $11,000. The complaint was for accidental death benefits under the terms of two life insurance policies on the life of plaintiffs' son, of which plaintiffs are the beneficiaries. One of the policies is for $1,000 and the other for $10,000.

The insured decedent, Richard Wessel, was twenty-one years of age at the time of his death on January 10, 1963. Prior to his death he was employed by his father in the auto radiator and auto air conditioning business in Fairmont, Minnesota. For several days prior to December 25, 1962, Richard suffered from abdominal pains of increasing severity as well as a feeling of general malaise. On Christmas day he was first examined by a doctor in connection with these complaints and was immediately admitted to the Fairmont County Hospital. It was there determined that decedent was suffering from the disease infectious mononucleosis. During the next few days Richard's abdominal pains continued to increase in severity. Additional tests indicated that intra-abdominal hemorrhage was occurring. An operation was performed on December 28, 1962, at which time it was found that decedent's spleen was swollen to five or six times its normal size and contained multiple lacerations. A splenectomy was performed. Subsequent to this surgery, decedent's physical condition continued to deteriorate at a rather rapid rate. In addition to the continued symptoms of infectious mononucleosis, symptoms of acute myocarditus, small bowel partial obstruction and acute gastritus became manifest. These new conditions were considered by the attending doctors to be complications resulting from the primary disease, infectious mononucleosis. On January 10, 1963 Richard died. The death certificate signed by the attending physician, Dr. Wandke, stated the cause of death to be infectious mononucleosis.

Prior to the trial of this case it was stipulated that one or more accidents befell decedent a short time before his death. It was stipulated that on December 18, 1962, the decedent slipped while taking a radiator out of a car, that he slipped on the ice and fell on December 22, 1962, and that on December 24, 1962 he was carrying a heavy pail of solder and injured himself in some way. These stipulated accidents were unwitnessed and neither the decedent nor his father (to whom they were related by the decedent) appeared at the time to regard them as more than minor occurrences. No doctor was consulted; nor did there appear to be any substantial external bruise, laceration, or other manifestation of injury.

Dr. Wandke, who stated on the death certificate that the cause of death was infectious mononucleosis, later changed his opinion and testified that Richard died of a ruptured spleen. There is evidence in the record that infectious mononucleosis causes an enlargement of the spleen and that a spleen in an enlarged condition might be subject to rupture by external trauma. The jury accepted the testimony of Dr. Wandke and inferred that one or more of the various accidents caused the spleen to rupture. Apparently it was on this basis that plaintiffs were awarded a jury verdict.

The sole problem before this Court is whether this was sufficient evidence to warrant recovery under the specific wording of the policies and dictates of Minnesota law. The $1,000 policy provides:

"ACCIDENTAL MEANS DEATH BENEFIT AS LIMITED AND DEFINED HEREIN

"* * * The Company will pay the amount of the Accidental Means Death Benefit * * * upon receipt * * * of due proof that the death * * * occurred as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means. * * *

"(3) No such Accidental Means Death Benefit shall be payable if the

injury or death results (a) directly or indirectly from bodily or mental infirmity or disease, even though * * * an injury contributed to the death or was the proximate or precipitating cause thereof * * *."

The $10,000 policy provides:

"ACCIDENTAL DEATH BENEFIT PROVISIONS

" * * * the Company will pay the amount of the Accidental Death Benefit * * * upon receipt * * * of due proof that the insured's death resulted directly and independently of all other causes, from accidental bodily injury. * * *

"No Accidental Death Benefit shall be payable if the injury or death results * * * (2) directly or indirectly from bodily or mental infirmity or disease * * *."

We agree with the trial court that the differences in wording between these two policies are not material for purposes of this decision.

Obviously, in order to recover under the strict provisions of the accidental death provisions contained in these policies, insured's death must have been caused by "accidental means", "independently of all other causes", and "not directly or indirectly from bodily infirmity or disease." The Minnesota rules interpreting this type of accidental death provision are stated in National Masonic Acc. Ass'n of Des Moines v. Shryock, 73 F. 774, 775–776 (8 Cir. 1896):

"The burden of proof was upon the * * * (plaintiff) to establish the facts that the accident was the sole cause of his death, independently of all other causes. If * * * (he) suffered such an accident, and his death was caused by that alone, the association agreed by this certificate to pay the promised indemnity. But if he was affected with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or not. If he

sustained an accident but at the time it occurred he was suffering from a pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, the express contract was that the association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident, and the contract exempted the association from liability therefor."

The Minnesota Supreme Court quoted this formulation of law with approval in White v. Standard Life & Acc. Ins. Co., 95 Minn. 77, 103 N.W. 735, 736 (1905) and Kundiger v. Metropolitan Life Ins. Co., 218 Minn. 273, 15 N.W.2d 487 (1944).

From these pronouncements the plaintiffs plainly had the burden of presenting evidence from which the jury could have concluded that one or more of the three accidents was the sole cause of the insured's death. We agree with the trial court that plaintiffs failed in this endeavor. Defendant's expert witness, a pathologist, testified that Richard died of infectious mononucleosis and its complications. It was his opinion that the disease caused the spleen to rupture. Plaintiffs' own expert, Dr. Wandke, agreed that Richard was suffering from infectious mononucleosis, and that the disease would cause an enlargement of the spleen. Thereafter, a blow to this enlarged and diseased spleen would cause it to rupture. Accepting this evidence most favorable to the plaintiffs it still only indicates that he either "died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident." Therefore, "death * * * was caused partly by the disease and partly by the accident, and the contract exempted the association from liability therefor." National

Masonic Acc. Ass'n of Des Moines v. Shryock, supra. There being no evidence to support a finding that the accidental injury alone caused the death, the judgment notwithstanding the verdict was proper.

■ Appellants contend that regardless of the language of the insurance contracts the issue of liability ultimately depends upon proximate cause, and the evidence supported a finding that the injuries received by the decedent were the proximate cause of his death. In this connection it is argued that Minnesota law has been liberalized in their favor by Wolfangel v. Prudential Ins. Co., 209 Minn. 439, 296 N.W. 576 (1941). In that case, the plaintiff's decedent had died of syphilis twelve days after a severe fall. Prior to the accident, the decedent had been a man of good health and vigor in whom the symptoms of the disease from which he died were not manifest. In an action to recover accidental death benefits under an insurance contract like the one herein involved, it was held that since the fatal aspects of the disease were entirely set in motion by the accident, the accident was indeed the direct and sole cause of death. See Mair v. Equitable Life Assurance Society of United States, 193 Minn. 565, 259 N.W. 60 (1935). The *Wolfangel* case apparently does not change the prevailing Minnesota rule on this point. It merely carves an exception out of the "sole cause" doctrine which states that an accident is the sole cause of death when it activates the fatal aspects of a particular disease. In the present case, however, there is a manifest infirmity which was merely aggravated by the injury; with the disease and the injury cooperating to bring about death. After consideration the trial court felt that the facts of the present case did not come within the specific *Wolfangel* exception to the recognized Minnesota law regarding the "sole cause" provision in the accidental death insurance policy. Furthermore, the trial court felt that the *Wolfangel* case should not be expanded to cover this particular factual situation. As a result this case

was governed by the general Minnesota rule and the clear wording of the policies in question. The trial court has thus made a determination and application of the law of the state in which it is sitting. In such a situation the Federal District Court presumedly has a superior knowledge of the local law, and we will not adopt a view contrary to that of the trial court unless we are convinced of its error. Illinois Central Railroad Company v. Stufflebean, 270 F.2d 801 (8 Cir. 1959). Therefore, the trial court's decision that the principles of law set forth in National Masonic Acc. Ass'n v. Shryock, supra, are determinative of the issues herein will not be disturbed.

Applying the law set forth in National Masonic Acc. Ass'n v. Shryock, supra, there was clearly a lack of foundation for a finding by the jury that the accidents were the sole cause of death, unaffected by the pre-existing disease of mononucleosis. Under the trial court's interpretation of Minnesota law appellants were not entitled to recover. The judgment notwithstanding the verdict was properly granted. Under the circumstances we must affirm this judgment.

Notwithstanding our agreement with the trial court in this matter, still, if the aforementioned defect in the evidence were such that it could be cured by the granting of a new trial, we, like the trial court, would be inclined to accede to appellants' alternative request. However, in this case it is clear that this defect would not likely be remedied by a new trial. There are no witnesses to the aforementioned accidents. So, it would be impossible to produce any facts regarding their severity or the effect they might reasonably have had on the decedent. Moreover, the only evidence that any of the events relied upon by the plaintiffs even occurred is through conversation which the decedent had with his father. Here, a serious question of admissibility under the Minnesota "Dead Man's Statute", M.S.A. § 595.04 (1961) was recognized by the trial court. Even though this factual question played no part in this litigation, due to the stipu-

lation of defendant's counsel, there is no assurance that any evidence of the mishaps would be permitted in a new trial.

Assuming, however, that the plaintiff could surmount the obstacles discussed in the preceding paragraph and that the stipulation of the traumatic incidents occurring would be in force and effect at another trial, the fact remains that the active infectious mononucleosis disease with its complications would in any event be a major concurring or cooperating cause of the insured's death, which under the Minnesota law, as interpreted by the trial court, would preclude recovery.

In light of the foregoing, the judgment of the trial court is affirmed.