2002 ME 142

Jack Dean PELKEY

v.

GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY

Supreme Judicial Court of Maine.

Argued: March 6, 2002.
Reargued: June 12, 2002.
Decided: Aug. 21, 2002.

Arthur J. Greif, Esq. (orally), Julie D. Farr, Esq. (orally), Gilbert & Greif, P.A., Bangor, for plaintiff.

John B. Lucy, Esq. (orally), Richardson, Whitman, Large & Badger, P.C., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Jack Dean Pelkey appeals from the grant of a summary judgment entered in the Superior Court (Penobscot County, *Mead, J.*) in favor of General Electric Capital Assurance Company. Pelkey contends that the court erred in construing his insurance contract with General Electric Capital Assurance to exclude coverage for the accidental loss of his leg because his pre-existing condition contributed to the loss. Because the policy is ambiguous on the impact of pre-existing conditions, we vacate the judgment.

## I.  CASE HISTORY

[¶ 2] The case history is developed from the parties' jointly stipulated facts and a copy of Pelkey's original insurance contract.

[¶ 3] In 1986, Jack Pelkey obtained an accident insurance policy issued by AMEX Life Assurance Company. The policy was procured through Pelkey's credit union, with premiums to be deducted from his account. The coverage clause of the policy provided that:

> "Injury" means bodily injury of an Insured Person which: (1) is caused by an accident that occurs while the policy is in force as to the Insured Person; (2) results directly in loss insured by the Policy; (3) creates a loss due, directly and independently of all other causes, to such accidental injury; and (4) occurs in the manner and under the circumstances described in the Descriptions of Hazards which apply.

[¶ 4] The policy also contained an exclusions clause that excluded from coverage losses caused by: (1) being under the influence of alcohol, drugs, or sedatives; (2) committing or attempting to commit illegal acts; or (3) suicide, war, or riding in an aircraft, except as a passenger. The policy contained no exclusions for pre-existing diseases or conditions.

[¶ 5] The policy continued in effect at all times relevant to this case. At some time General Electric Capital Assurance Company became the insurer for the policy.

[¶ 6] In April of 1998, Pelkey suffered an accidental fall resulting in an infection in

his left knee. The infection did not respond to multiple treatments. Pelkey's condition worsened and eventually led to the amputation of his left leg below the knee.

[¶ 7] Prior to and during this incident, Pelkey suffered from and received treatment for pre-existing medical conditions, including diabetes and severe peripheral vascular leg disease. Before his accident, Pelkey had undergone a surgical bypass graft in his left leg, which provided the only means of circulation in that leg. The parties stipulated that Pelkey's pre-existing diabetes, peripheral vascular disease, and impaired circulation in his left leg, together with his fall on April 18, 1998, were substantial contributing factors to his development of infection, septic arthritis, and osteomyelitis, and the eventual amputation. The parties also stipulated that Pelkey's fall would not have resulted in the osteomyelitis and the need for amputation but for the contribution of the pre-existing diabetes and vascular disease, and the already precarious circulation in his left leg.

[¶ 8] General Electric determined that the fall was not the sole cause of the amputation and refused to pay pursuant to the policy. Pelkey filed a complaint in the Superior Court alleging breach of contract and unfair claims practices.[1] Following discovery, both parties submitted simultaneous motions for summary judgment based on the joint stipulation of the facts. The court concluded that Pelkey's injury was excluded from the scope of his insurance contract with General Electric and entered a summary judgment in favor of General Electric because the loss did not result, "directly and independently of all other causes," from his accidental fall. Pelkey appeals.

## II. DISCUSSION

■ [¶ 9] There appears to be no dispute that the first, second, and fourth elements of the insurance contract's definition of injury are present in this case. Pelkey contends that coverage of his accidental loss is not excluded by the third element of the injury definition, which requires that the injury "creates a loss due, directly and independently of all other causes, to such accidental injury." He argues that a pre-existing medical condition is not a "cause" within the meaning of the policy and that, because the policy contains no separate "disease exclusion" for pre-existing medical conditions, the loss of his leg is compensable under the contract.

■ [¶ 10] In reviewing the grant of a summary judgment, we take the evidence in the light most favorable to Pelkey to determine if the court committed any errors of law in the interpretation of his insurance policy. *See Acadia Ins. Co. v. Mascis,* 2001 ME 101, ¶ 9, 776 A.2d 617, 620. The interpretation of an insurance contract is a matter of law that we review de novo. *Id.* Insurance contract language is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought. *Hall v. Acadia Ins. Co.,* 2002 ME 110, ¶ 6, 801 A.2d 993, 995; *Geyerhahn v. United States Fid. & Guar. Co.,* 1999 ME 40, ¶ 12, 724 A.2d 1258, 1261. Any ambiguity in an insurance contract is construed "strictly against the insurer and liberally in favor of the insured." *Mascis,* 2001 ME 101, ¶ 9, 776 A.2d at 620 (quoting *Ray v. Blue Alliance Mut. Ins. Co.,* 594 A.2d 1110, 1111 (Me.1991)). It is Pelkey's burden, however, to show that his injury falls within the scope of the contract. *See Bouchard v.*

---

1. Pelkey later dismissed the count of unfair claims practices.

*Prudential Ins. Co. of Am.*, 135 Me. 238, 239, 194 A. 405, 406 (1937).

[¶ 11] We addressed a similar question in *Bouchard v. Prudential Insurance Co. of America. Id.* In that case, a restaurant owner died soon after engaging in a physical altercation to remove an unruly patron. *Id.* at 239, 194 A. at 406. He was covered by an accidental death insurance policy that provided for payment if "the death of the insured occurred ... as a result, directly and independently of all other causes, of bodily injuries ...." *Id.* (internal quotation marks omitted). Expert testimony revealed that the decedent also had advanced arteriosclerosis, and that his death was brought about by the exertion of the altercation in combination with his already weakened heart condition. *Id.* at 240, 194 A. at 406–07.

[¶ 12] In *Bouchard,* as here, the insured was covered by an accidental loss insurance policy. *Id.* at 239, 194 A. at 406. In *Bouchard,* as here, the insurance policy included other specific cause exclusions that would be unnecessary if the policy actually excluded coverage for all other causes of a loss. In *Bouchard,* as here, the accidental event combined with the insured's pre-existing disease to cause the loss. But in *Bouchard,* unlike this case, the policy contained a specific disease exclusion barring recovery if the loss resulted "directly or indirectly from bodily or mental infirmity or disease in any form." *Id.* That disease exclusion made our resolution of *Bouchard* rather simple. Because the death resulted "indirectly from bodily ... infirmity or disease," coverage was excluded. *Id.*

[¶ 13] In justifying its result, the *Bouchard* opinion includes, as dictum, some broader language that General Electric argues justifies exclusion of coverage. The dictum in *Bouchard* indicates that:

(1) When an accident caused a diseased condition, which together with the accident resulted in the injury or death complained of, the accident alone is to be considered the cause of the injury or death.

(2) When at the time of the accident the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered as the sole cause.

(3) When at the time of the accident there was an existing disease, which, cooperating with the accident, resulted in the injury or death, the accident can not be considered as the sole cause or as the cause independent of all other causes.

*Id.* at 243, 194 A. at 408 (internal quotation marks omitted).

[¶ 14] The interpretation urged by General Electric would treat the explicit disease exclusion in *Bouchard* as surplusage. However, the dictum in *Bouchard* is appropriately viewed as supporting the lack of coverage based on the disease exclusion, rather than writing the disease exclusion out of the policy.

■ [¶ 15] The law was the same in 1937 as it is now. Where possible, we construe a contract to give force and effect to all of its provisions, and we avoid an interpretation that renders meaningless any particular provision of the contract. *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 9, 756 A.2d 515, 517; *see also Blackard v. Nat'l Biscuit Co.*, 125 Me. 201, 202–03, 132 A. 386, 387 (1926). The disease exclusion in *Bouchard* had meaning to exclude coverage for a loss that was caused in part by a disease or physical condition, where, absent the condition, the loss would be covered under the policy. The intoxication and crime exclusions here

must have been intended to have similar effect by the drafters of General Electric's policy.

■ [¶ 16] With the law in Maine established, since 1937, that an explicit disease exclusion will work to exclude coverage where a disease and an accident combine to produce a loss, a policy that does not include such an exclusion is certainly ambiguous on the issue of whether coverage may be excluded if an accidental event combines with the effects of a disease to produce a loss.[2]

[¶ 17] Today more than ever, we recognize that losses resulting from individual events frequently have several or many causes. *See, e.g., Wheeler v. White*, 1998 ME 137, ¶¶ 6–10, 714 A.2d 125, 127–28; *Shaw v. Bolduc*, 658 A.2d 229, 235–36 (Me.1995). If we interpret the "directly and independently of all other causes" language of the policy to exclude coverage of any loss contributed to, in some way, by a pre-existing condition, or any cause other than the accident, then an accidental injury policy such as the General Electric policy here would cover little. It would provide almost no coverage for losses to consumers who may believe, erroneously, that when they are buying an accidental loss policy, they are getting coverage for losses caused by accidents. General Electric's interpretation would render its own exclusions for being under the influence of alcohol, drugs, or sedatives, unnecessary surplusage.

[¶ 18] If General Electric's interpretation of its policy prevails, there would be no coverage if a loss is affected or aggravated in some small part by: (1) less than perfect speed or skill by emergency personnel responding to a scene; *see, e.g., Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, 796 A.2d 674; (2) less than perfect aftercare by the insured, his or her family, or medical personnel; *see, e.g., Walker v. Maine Gen. Med. Ctr.*, 2002 ME 46, 792 A.2d 1074; (3) less than perfect health of the victim; or (4) any other of a myriad of events or conditions that may occur before or after an accident and for which an accident victim may be entirely blameless. Such an approach is hardly consistent with our law that ambiguities in insurance contracts must be construed strictly against the insurer and liberally in favor of the insured.

[¶ 19] Here the ambiguity, if it can be called an ambiguity, is the failure of the General Electric policy to include the so-called "disease exclusion," which has been recognized as important in Maine law governing such accidental loss policies since 1937. Lacking such a recognized exclusion, the General Electric policy, construed liberally in favor of the insured, must be interpreted to hold that the loss that Mr. Pelkey suffered as a result of his accident is covered under the policy.

[¶ 20] When General Electric accepted Mr. Pelkey's payments for the policy, it took Mr. Pelkey as it found him—with his pre-existing physical condition. Mr. Pelkey's loss of his leg would not have occurred but for the accident, which is a covered event. To interpret the policy as General Electric urges would render the

---

**2.** Other jurisdictions are split on this point, although the cases rely on differing contract language and legal authority. *Compare Kangas v. N.Y. Life Ins. Co.*, 223 Mich. 238, 193 N.W. 867, 869 (1923) (allowing coverage where an accident combines with a pre-existing condition to cause loss), and *Stevenson v. Conn. Gen. Life Ins. Co.*, 265 S.C. 348, 218 S.E.2d 427, 430 (1975) (same), with *Gay v. Am. Motorists Ins. Co.*, 714 F.2d 13, 16 (4th Cir.1983) (excluding coverage where an accident combines with a pre-existing condition), *Hall v. Allstate Life Ins. Co.*, 737 F.Supp. 1453, 1455 (N.D.Miss.1990) (same), and *Ellice v. INA Life Ins. Co. of N.Y.*, 208 Conn. 218, 544 A.2d 623, 627–29 (1988) (same).

policy of no value to individuals like Mr. Pelkey who have pre-existing physical conditions that may slow or prevent their recovery from accidental injuries.

The entry is:

Judgment vacated. Remanded for entry of judgment for the plaintiff, Jack Dean Pelkey.

SAUFLEY, C.J., with whom CLIFFORD and RUDMAN, JJ., join, dissenting.

[¶ 21] The Court in this case concludes that, absent a disease exclusion like the one found in *Bouchard v. Prudential Insurance Co. of America*, 135 Me. 238, 239, 194 A. 405, 406 (1937), the language of the policy requiring that the accident "creates a loss due, directly and independently of all other causes, to such accidental injury" entitles an insured to losses actually caused by pre-existing medical conditions rather than the accident. In my view, this proposition is supported by neither the plain language of the policy nor by our prior decisions. Thus, I respectfully dissent.

[¶ 22] The Court has engaged in a definitional tautology—a medical condition that causes the loss of a limb is not a cause because it is a medical condition. The requirement that the accident cause the injury "directly and independently of all other causes," by its plain language prohibits the contribution of any kind of cause, including that of a pre-existing medical condition. Although a person need not be in perfect health at the time of the accident to recover,[3] when a pre-existing medical condition contributes to the ultimate loss in some meaningful way, the accident cannot be found to have been the sole cause of the loss, "directly and inde-

pendently of all other causes." Thus, recovery would be barred by the exclusive cause condition when a pre-existing medical condition meaningfully contributes to the loss. Holding otherwise converts this very inexpensive, highly focused insurance policy into one encompassing coverage for a multitude of losses caused by a combination of the impaired health of the insured and an accident. Inexpensive, readily available, and limited, accident insurance has now become a form of health insurance. The contract unambiguously excludes such a result.

[¶ 23] Furthermore, *Bouchard* is, in fact, instructive. Although in *Bouchard*, unlike the present case, the insurance policy also contained a disease exclusion that denied payment if death resulted "directly or indirectly from bodily or mental infirmity or disease in any form," our analysis and holding relied not on this disease exclusion, but rather on the language of the exclusive cause condition virtually identical to the one in Pelkey's policy with General Electric. *Bouchard*, 135 Me. at 239, 194 A. at 406. Our conclusion in *Bouchard* was based on the rule that "[w]hen at the time of the accident there was an existing disease, which, co-operating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes." *Id.* at 243, 194 A. at 408. As such, the insured's loss was not covered by his policy pursuant to the exclusive cause condition. *Id.*

[¶ 24] This is exactly the case here. The parties stipulated that Pelkey's pre-existing medical conditions were "substantial contributing factors" to the eventual amputation of his leg, and that the accidental fall alone would not have resulted in the loss of his leg. These stipulations place

---

**3.** Even a person in less than perfect health will recover for an injury caused by an acci-

dent unless that person's health problems are medically related to the loss.

Pelkey's circumstances squarely outside the language of the contract that permits recovery only when the loss is due, "directly and independently of all other causes" to the accidental injury. I would therefore affirm the judgment of the Superior Court in favor of General Electric.