Richard SHAW and Lillian Massie

v.

Jean L. BOLDUC and Mid–Maine Medical Center.

Supreme Judicial Court of Maine.

Argued Nov. 4, 1994.
Decided May 15, 1995.

Jonathan C. Hull (orally), Damariscotta, for plaintiffs.

George Singal (orally), Daniel Pileggi, Gross, Minsky, Mogul & Singal, Bangor, David C. Norman, Christopher C. Taintor (orally), Norman, Hanson & Detroy, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Lillian Massie and Richard Shaw, the parents of Ricky Shaw, appeal from the judgment entered in favor of Mid–Maine Medical Center (Mid–Maine) and Dr. Jean Bolduc (Bolduc) on jury verdicts in the Superior Court (Kennebec County, *Chandler, J.*) in a medical malpractice case. The parents challenge an evidentiary ruling, the instructions to the jury, and the consistency of the verdict. We affirm the judgment.

The parents filed suit in June 1988 against Mid–Maine and Bolduc alleging negligence resulting in injuries to Ricky. At trial, they contended the attending nurses violated the standard of care in not notifying a supervisor about certain signs of distress Lillian Massie exhibited before delivery, and in not preventing certain actions of Bolduc. They alleged that Bolduc violated the standard of care in beginning delivery too late, in dunking Ricky in cold water, and in using inappropriate methods of resuscitation. Bolduc and Mid–Maine presented an alternate theory of causation. Their witnesses testified that an intrauterine infection, unrelated to the care at delivery, caused Ricky's injuries.

By agreement of counsel, the verdict form separated the questions of negligence and proximate cause and did so for each defendant, a practice that is neither necessary nor desirable. Although seven jurors found both Mid–Maine and Bolduc negligent, they also found that their negligence was not the proximate cause of Ricky's injuries. One juror found Bolduc and one juror found Mid–Maine both negligent and liable. Six jurors concurred with the verdict, two did not, indicating that the votes finding liability with respect to each defendant represented different jurors.

### A. *Extracts from Learned Treatises*

We first address the question whether the court erred in allowing the defendants to read statements from various studies, articles and professional statements while cross-examining witnesses without informing the parents of his intention to use them and without first establishing the sources as authoritative, in violation of M.R.Evid. 803(18). Although the parents did not renew their objection every time counsel for Mid–Maine read such a statement, they did object on the basis of M.R.Evid. 803(18) at the first opportunity and the trial court fully considered the issue. We consider the issue preserved. *See Sullivan v. Johnson*, 628 A.2d 653, 655 (Me. 1993).

At the trial, causation was vigorously contested. The parents claimed that the negligent failure of Bolduc and Mid–Maine to properly treat the asphyxia of Ricky Shaw at and immediately following his birth, aggravated by their negligent inducement of hypothermia, proximately caused the permanent mental and physical impairment suffered by Ricky. Bolduc and Mid–Maine were united in the defense that an intrauterine infection suffered by Ricky's mother at the time of his birth, unrelated to Bolduc and Mid–Maine's care of Ricky, was the proximate cause of Ricky's injuries.

During Mid–Maine's cross-examination of Henry G. Cramblett, the parents' first expert medical witness on causation, Cramblett was asked whether he was acquainted with a 1985 publication by the National Institute of Health. The witness testified he had no knowledge of the publication. When Cramblett was further asked whether he agreed or disagreed with certain statements obviously contained in that publication, the parents objected on the ground that pursuant to the "learned treatise rule" the witness could not be asked whether he agreed or disagreed with a publication from a source not previously established as authoritative and of which the parents had no prior notice. The court overruled the parents' objection. Thereafter, throughout the course of the trial, the defendants followed this pattern of cross-examination of expert witnesses relative to various publications without further objection by the parents.

It is uncontroverted that the parents received no pretrial notice that the defendants intended to use the treatises. Whether the trial court erred in its ruling and whether, as argued by the parents, the error, if any, requires that the judgment for Bolduc and Mid–Maine be vacated, necessitates in the first instance consideration of any authority that may be applicable to the issue, and

second, whether the challenged cross-examination is governed by that authority.

In promulgating the Rules of Evidence in 1976, the Supreme Judicial Court modeled M.R.Evid. 803(18) after the equivalent federal rule. Maine's rule provides, in pertinent part, that the following is not excluded by the general rule making hearsay inadmissible:

> To the extent called to the attention of an expert witness upon *cross-examination*,[1] statements contained in published treatises, periodicals, or pamphlets on a subject of ... medicine, ... established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admissible, the statements may be read into evidence but may not be received as exhibits.

M.R.Evid. 803(18) (emphasis added).

This subdivision changed the preexisting law by making published treatises admissible as substantive evidence. Previously, published medical treatises could be admitted only to impeach a medical witness who relied at least in part on any medical authority for an opinion. Giving these treatises a substantive effect accords with the realities of actual practice. "In accepting a treatise as substantive evidence under the prescribed conditions, [the rule] implicitly recognizes that jurors are unlikely to understand and follow instructions as to the limited purpose for which evidence is admissible." Field & Murray, *Maine Evidence* § 803.18 at 8–75 (3d ed.1992) (hereinafter Field & Murray at ____); *see also* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(18)[01] (1994) ("Rule 803(18) avoids the unreality of admitting evidence for one purpose but pretending that the jury will follow instructions not to consider it otherwise.").

■ To be admitted under this exception, it is necessary that the treatise be established as authoritative. This does not re-

---

1. Federal Rule of Evidence 803(18) goes further than the Maine Rule. In addition to allowing the admission of a treatise called to an expert's attention on cross-examination, the federal rule allows the admission of a treatise relied on by an expert on direct examination. As noted in the Advisers' Note to the Maine Rule, "It seems undesirable to allow an expert to bolster his direct testimony by use of a supporting treatise as substantive evidence. The Federal Advisory Committee's statement that the chance of misunderstanding and misapplication of the treatise is avoided because the expert is on the stand and available to explain it is unimpressive." M.R.Evid. 803(18) advisers' note, Field & Murray, *Maine Evidence* 8–41 (3d ed.1992).

quire that the expert being cross-examined relied on the treatise or concedes its authoritativeness. The Rule itself provides that this requirement can be met by the testimony of another expert or by judicial notice. Although the Court has never been called on to determine many of the issues presented in this case, Weinstein's discussion of the Rule is both enlightening and persuasive:

> The proponent of the treatise may not read from it or question the expert in regard to it except as to its status as an authority, until its authoritativeness has been established to the satisfaction of the trial judge, and its relevancy to a material, consequential fact has been shown. The Court has discretion to exclude pursuant to Rule 403 if the probative value of the statement in the treatise is substantially outweighed by the dangers of prejudice, confusion or waste of time. Depending on the nature of the fact sought to be proved, its significance to the case, and the availability of other evidence on the point, the trial judge may elect to have the question of the admissibility of the treatise explored outside the presence of the jury. In cases such as medical malpractice litigation, when the admissibility of treatise evidence may be crucial, determination of this issue at a pretrial conference pursuant to Rule 16 of the Rules of Civil Procedure is appropriate.

*Weinstein's Evidence* ¶ 803(18)[02] (footnotes omitted). Weinstein also states that the trial court may "allow use of the treatise on the premise that a subsequent witness will establish validity." *Id.* ¶ 803(18)[02] n. 14.

Following the promulgation of the Rules of Evidence, Rule of Civil Procedure 16 was amended in 1976 to require the pretrial memoranda to state the intention of a party to offer a learned treatise as substantive evidence. *See* M.R.Civ.P. 16(d)(3)(R).[2] The Advisory Committee's Note states:

> The amendment was recommended by the Evidence Advisory Committee. Evidence Rule 803(18) provides as an exception to the hearsay rule for the use of statements of learned treatises to the extent they are called to the attention of an expert witness upon cross-examination. If a treatise is established as authoritative, it may then be admitted as substantive evidence. For the purpose of preventing the expert from being unfairly surprised, this amendment calls for the identification of the treatise and the part thereof to be offered and specification of the matter intended to be proved.

M.R.Civ.P. 16 advisory committee's note to 1976 amend., 1 Field, McKusick & Wroth, *Maine Civil Practice* 141 (2d ed. Supp.1981).

■■■ As we noted, the parents contend they are entitled to a new trial because the defendants, without complying with necessary prerequisites, were allowed to present their theory of causation by the challenged cross-examination of the parents' experts and to bolster this theory by Bolduc's and Mid–Maine's expert witnesses. Bolduc and Mid–Maine advance several unpersuasive contentions to refute that of the parents. In the first instance, the record does not lend any support to Mid–Maine's contention that M.R.Evid. 803(18) was not applicable because excerpts from the treatises were not being *read* by Mid–Maine in the course of its cross-examination of the parents' experts;[3] Weinstein makes clear that the witness *cannot be questioned* with regard to a treatise without its authoritativeness being established. *Weinstein's Evidence* ¶ 803(18)[02]. Nor is there any merit in the defendants' contention that by cross-examination of the experts they

---

2. M.R.Civ.P. 16(d) provides as follows:

(3) *Contents of Plaintiff's Pretrial Memorandum.* The pretrial memorandum first filed in an action under this subdivision shall contain the following information:

. . . .

(R) If a party intends to offer a learned treatise as substantive evidence at the trial, a statement identifying the treatise and the part or parts thereof to be offered and specifying the matter to be proved thereby.

3. The trial transcript reveals that the treatises are being read by the examiner. For example, in Mid–Maine's cross-examination of Dr. Cramblett, as a preface to the question whether the witness agreed or disagreed with certain statements, the examiner stated, "I am reading from a summary of the entire report." Again, in the cross-examination of Dr. Victor Chernick, another expert witness of the parents, the examiner prefaced such questions with "I quote."

presented no evidence that fell within the purview of M.R.Evid. 803(18). That contention is belied by their alternative arguments and by the content of the material used. The statements, extracted from various treatises used as the basis for the defendants' questioning of expert witnesses on cross-examination, were relevant to the material and consequential fact of causation and probative of that issue. The challenged evidence was offered for the purpose of establishing that Ricky Shaw's injuries were proximately caused by an intrauterine infection suffered by his mother at the time of his birth and not a result of the claimed negligence of Bolduc and Mid–Maine. Indeed, it was adopted by Bolduc's and Mid–Maine's experts as consistent with their own testimony on the issue of causation. The challenged material was focused on the primary issue of causation.

In response to the parents' contention that the parents' experts were cross-examined concerning the statements read to them without Bolduc and Mid–Maine first having established the authoritativeness of the source, Bolduc and Mid–Maine argue that in the course of their case this requirement was met by the testimony of their experts. In support of their argument, Bolduc and Mid–Maine rely on the language contained in M.R.Evid. 803(18) providing that the authoritativeness of a published treatise can be established "by admission of the witness or by other expert testimony." Although the record supports their argument, it is not decisive of the issue. The thrust of the issue preserved by the parents is that this requirement must be met before the cross-examination of the parents' experts. M.R.Evid. 803(18) is silent on this precise issue. Although we recognize the need for flexibility on the matter of timing, common sense dictates that the better practice would be to require that the authoritativeness of the material be established out of the presence of the jury prior to its use on cross-examination. This avoids the possibility of allowing the jury to hear evidence for which the proffering party is subsequently unable to or fails to establish the proper foundation. *See* M.R.Evid. 103(c). A careful review of the entire record, however, leads to the conclusion that in the unique circumstances of this case it is highly probable that the error, if any, as to the timeliness of establishing the authoritativeness of the challenged material did not affect the verdict. *See* M.R.Evid. 103(a) ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"); M.R.Civ.P. 61; *State v. True*, 438 A.2d 460, 467 (Me.1981) (substantial right not affected if highly probable error did not affect the judgment).

■ By their objection when the matter at issue was first presented to the trial court, the parents also preserved for appellate review whether the judgment should be vacated for the failure of Mid–Maine to give the parents pretrial notice of its intention to use the challenged treatises in the course of the trial. At the trial, the parents sought the sanction of exclusion of the evidence, which was denied by the court on the ground that the challenged evidence did not fall within M.R.Evid. 803(18), and accordingly, no notice was required. No continuance was requested by the parents. *See Spickler v. York*, 566 A.2d 1385, 1388 n. 1 (Me.1989) ("The granting of a continuance is the usual remedy for the unfair surprise that results from the introduction of previously undiscovered evidence or an undesignated witness.").

■ The purpose of M.R.Civ.P. 16(d)(3)(R) is to prevent unfairly surprising an expert. For the violation of M.R.Civ.P. 16(d)(3)(R), like violations of other requirements of the rule, the trial court in its discretion may impose various sanctions.[4] M.R.Civ.P. 16(h). The law is well established that this Court reviews the trial court's determination as to what sanctions, if any, should be imposed for a discovery viola-

---

4. M.R.Civ.P. 16(h) provides:
   If a party fails to comply with the requirements of this rule or any order made hereunder, the court shall impose upon the party or the party's attorney, or both, such sanctions as the circumstances warrant, which may include the dismissal of the action or any part thereof with or without prejudice, the default of a party, the exclusion of evidence at the trial, and the imposition of costs including attorney's fees and travel.

tion for an abuse of discretion. A trial court is invested with considerable discretion in this regard. Whether a sanction should be imposed or, if imposed, the nature of the sanction depends on the circumstances of each case, and "we will not 'lightly overrule' a trial court's discretionary determination." *Estate of Galluzzo*, 615 A.2d 236, 239 (Me. 1992). We have stressed in the past the importance of compliance with discovery rules. "It is the purpose of both the discovery rules and the pretrial conference to eliminate the sporting theory of justice and to enforce full disclosure." *Reeves v. Travelers Ins. Cos.*, 421 A.2d 47, 50 (Me.1980) (citations omitted).

█ When, as here, the issue is preserved by a timely objection, we review the entire record to determine whether the trial court's ruling affected a substantial right of the objecting party. M.R.Civ.P. 61. The record in this case reveals that the extensive pretrial discovery in this case made obvious to all parties that causation was the primary issue. No later than December 5, 1989, approximately four years before the trial of this case, when Walter C. Allan, an expert medical witness for Bolduc and Mid–Maine, was deposed by the parents, they became aware that Bolduc's and Mid–Maine's theory of causation was an intrauterine viral infection suffered by Ricky Shaw's mother at the time of his birth rather than the causative factors claimed by his parents. In March 1990, each of the parties filed a pretrial memorandum.[5] Allan was listed by both Bolduc and Mid–Maine as one of several expert medical witnesses.[6] The parents in their brief do not argue they were "unfairly" surprised by the lack of a pretrial notice. The record reveals that in fact they had notice of Bolduc's and Mid–Maine's theory of causation several years prior to the trial of this case. There is nothing in the record to support, nor do the parents contend, that Bolduc and Mid–Maine intentionally violated M.R.Civ.P. 16(d)(3)(R)

to effect an "unfair surprise" of the parents' expert medical witnesses. Based on the entire record in this case, we conclude it was highly probable the trial court's erroneous ruling did not affect the judgment.

### B. Jury Instructions

█ We turn to the parents' appeal from the court's denial of their request for expanded instructions on proximate cause and multiple causation. The parents timely objected to this denial. They also challenge the omission of their proposed instruction on joint and several liability, but because they did not object to this omission specifically, they did not preserve the issue. We review only the proximate cause and multiple causation challenges. In the course of our consideration of such a challenge, we review the jury instructions in their entirety to determine whether the court accurately and adequately explained the relevant law. *Stanley v. Schiavi Mobile Homes, Inc.* 462 A.2d 1144, 1149 (Me.1983) (finding proximate cause instruction, while "inartful," not misleading).

█ The court read the following proximate cause and multiple causation instruction:

Now, in the last couple of minutes I've used the term proximate cause several times. An injury or damage is proximately cause[d] by an act or failure to act whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or failure to act.

Now, there may be more than one proximate cause, but in order to prevail in this action the plaintiffs must have convinced you by the preponderance of the evidence that one or both of the defendants were negligent, as I've described that term to

---

5. Although the parents in their pretrial memorandum reserved the right to offer learned treatises on reasonable notice to Bolduc and Mid–Maine, neither Bolduc or Mid–Maine addressed treatises in their memoranda. The pretrial order stated, "Discovery is completed," with no mention of learned treatises.

6. Dorothy Eisengart, also listed as an expert medical witness by Bolduc and Mid–Maine, was deposed by the parents on September 5, 1990 and expressed the opinion that causation was an intrauterine viral infection of Ricky's mother. Both of these witnesses testified at the trial.

you; and further, that the negligence of one or both defendants was a proximate cause of the injuries and damages suffered by the plaintiffs.

The parents requested the following additional language with respect to multiple causation:

This does not mean that the law recognizes only one proximate cause of an injury or damage. On the contrary, two or more persons or things may act either independently or together to cause injury or damage. In such a case, there may be more than one proximate cause.

We stated in *Towle v. Aube*, 310 A.2d 259 (Me.1973):

A party is not entitled to have a requested instruction given, even if it states the law correctly, unless it appears that it is supported by facts, that it is not misleading, that it is not already covered by the charge, and that the refusal to give it would be prejudicial.

*Id.* at 266 (emphasis omitted). We also noted that "[T]he degree of amplification to be used in instructions to juries is a matter within the sound judicial control of the presiding Justice." *Id.* The parents make no showing that the refusal to give these expanded instructions was prejudicial, nor that the additional language would have clarified the issues in relation to the facts of the instant case. The trial court's instructions on both were adequate and accurate.

### C. The Verdict

We reject the parents' argument that the verdict is inconsistent. Seven jurors found Bolduc negligent but not liable and seven found Mid–Maine negligent but not liable. When determining whether jury verdicts are consistent, we review the evidence in the light most favorable to the verdicts, and will order a new trial only if the verdicts have no rational explanation. *Wood v. Great Atlantic & Pacific Tea Co.*, 452 A.2d 974, 976 (Me.1982). The jury in the instant case could reasonably have found that both Bolduc and the nurses violated their respective professional standard of care, but that those violations were not the cause of Ricky's injuries. Moreover, they could have found from credible evidence that Ricky's injuries were caused by an intrauterine infection unrelated in cause to the care at the time of his delivery. Thus considering the jury's response to the interrogatories we conclude that the verdicts are not without rational explanation. *Id.*

The entry is:

Judgment affirmed.

All concurring.