1997 ME 216

Brooke TAYLOR

v.

Pasquale LAPOMARDA, Jr.,
d/b/a the Casa Company

Supreme Judicial Court of Maine.

Argued Oct. 10, 1997.

Decided Nov. 7, 1997.

Paul F. Macri (orally), William D. Robit-zek, Berman & Simmons, P.A., Lewiston, John G. Connor, Portland, for plaintiff.

Jonathan W. Brogan (orally), Norman, Hansonb & DeTroy, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN and LIPEZ, JJ.

RUDMAN, Justice.

[¶ 1] Brooke Taylor appeals from the judgment entered in the Superior Court (Cumberland County, *Mills, J.*) denying her motion for a mistrial and for a new trial or, in the alternative, for entry of a judgment conforming to the jury's intent, to correct the "clerical error" of failing to enter a judgment consistent with the jury's intent, or for additur to increase the verdict to an amount conforming to the jury's intent. On appeal, Taylor contends that evidence that the jury misunderstood the comparative negligence portion of the verdict form, obtained by the court after the jury's discharge, mandates a mistrial and a new trial. We disagree and affirm the judgment.

I.

[¶ 2] Taylor initiated this negligence action after she fell from a staircase at property maintained by Pasquale Lapomarda, Jr. The trial court instructed the jury on comparative negligence and the use of the special verdict form.[1] Taylor has not contested either the

---

1. The instructions, in relevant part, were:
   After comparing the negligence of the plaintiff and the defendant, if you find that the

plaintiff was equally or more responsible for the damages she sustained then [sic] was the defendant, you will award no damages to the

sufficiency of the instructions of law or the court's directions as to the use of the jury verdict form.

[¶ 3] The original verdict form returned by the jury stated that Taylor's negligence was equal to or greater than Lapomarda's negligence. However, contrary to the judge's instructions and to the directions printed on the verdict form, the jury proceeded to answer questions four and five,[2] stating that Taylor's total damages were $8,500 and that her damages minus a sum for her contributory negligence equalled $500.

[¶ 4] Noting the inconsistency in the verdict form, Taylor moved for a mistrial. The court declined to grant a mistrial, choosing to reinstruct the jury and to give them a second verdict form. The jury's responses to the second form were identical to its responses to the first, except for its statement that Taylor's negligence was not equal to or greater than Lapomarda's negligence. After the reading of this verdict, the court asked the parties if they had "anything further before the jury is discharged." Both parties responded in the negative. The court then discharged the jury, and the jury left the courtroom. After the jury was discharged, however, Taylor again moved for a mistrial, contending that because the jury had re-

turned two verdicts "which are entirely inconsistent with each other," it must have misapprehended the court's instructions. Before the court could rule on this motion, the jury officer interrupted to inform the court that the jury wished to speak to it. The jury officer indicated that, after the jury had left the courtroom, members of the jury stated that they had intended to award Taylor $8,000 and that they had "messed up really bad." In response to this information, the court sent the jury a note stating:

> Members of the jury, I understand from the deputy that you would like to speak to me. Please write down on paper anything you would like me to know. Thank you. /s/ Justice Mills.

Subsequently, the jury replied:

Your honor:

> We the jury feel that question #5 is written to mean 2 things; either the net amount of the award *or* the amount of damages deductible for Plaintiff's negligence.

> Our intent is to award Brooke Taylor a net amount after deducting her negligence from Mr. Lapomarda's of:

$8,500    −    $500    =    $8,000
(Mr. Lapomarda)   (Ms. Taylor)   Net to Ms. Taylor

---

plaintiff. The law in Maine requires that a plaintiff be less responsible for damage than the defendant.

If you find that the plaintiff's responsibility was less than that of the defendant, then you will apportion damages between the plaintiff and the defendant. To do that you will first find and record the total damages that would have been recoverable if the plaintiff had not been at fault at all. Then you will reduce that total amount by dollars and cents and not by percentages to the extent you deem just and equitable having regard to the plaintiff's share in the responsibility for her damages. Then you will report the result to the Court as you will see on the verdict form, you will return both the total amount and the reduced amount of damages and it will be the reduced amount of damages which will be the verdict in favor of the plaintiff.

. . . .

I am going to hand out the verdict form now so that we can go through it and you can understand it.

. . . .

If you reach question number three it reads was the plaintiff's negligence equal to or greater than the negligence of the defendant? You

will indicate your answer. If the answer to question number three is yes, you will answer no more questions because as I told you, the law in Maine requires that a plaintiff be less responsible for the damage than the defendant.

If your answer to question number three is no, then you will proceed to questions number four and five . . . question number five reads to what dollar amount is the plaintiff's total damages found in answer number four to be reduced after deducting a just and equitable sum having regard to the plaintiff's negligence. This will be the amount awarded to the plaintiff if there is a verdict in her favor and if comparative negligence is found.

2. The questions were:

4. What is the total amount of Plaintiff's damages?

. . . .

5. To what dollar amount is the Plaintiff's total damages found in answer No. 4 to be reduced after deducting a just and equitable sum having regard to the Plaintiff's negligence? This will be the amount awarded to the Plaintiff, if there is a verdict in the Plaintiff's favor and if comparative negligence is found.

Taylor then reiterated her motion for a mistrial, which the court denied. The court later entered a judgment for Taylor in the amount of $0.[3] Taylor then moved for a mistrial and for a new trial or, in the alternative, "for the entry of judgment based on the jury's note to the presiding Justice, or to correct a clerical error pursuant to M.R. Civ. P. 60(a) of failing to enter judgment consistent with the jury's intent, or for additur to increase the judgment in plaintiff's favor to $8,000, as the jury apparently intended." The court denied Taylor's motion, stating, "the verdict in this case should not be disturbed as a result of the communication from the jury after it was discharged." This appeal followed.

## II.

[¶ 5] We review the denial of a motion for a mistrial for an abuse of discretion. *Sheltra v. Rochefort,* 667 A.2d 868, 871 (Me. 1995). "A trial court's discretion to grant a motion for a mistrial is limited to those rare cases where no remedy short of a new trial will satisfy the interests of justice." *Id.* (citations omitted). Similarly, "[t]he trial court's disposition of a motion for a new trial will be upheld unless shown to be a 'clear and manifest abuse of discretion.'" *LeClair v. Commercial Union Ins. Co.,* 679 A.2d 90, 92 (Me.1996) (quoting *McCain Foods, Inc. v. Gervais,* 657 A.2d 782, 783 (Me.1995)).

[¶ 6] Contrary to Taylor's contentions, the trial court did not exceed the bounds of its discretion by not granting her motion for a mistrial and for a new trial. Taylor argues that because the answers reflected on the first verdict form were internally inconsistent, because the answers reflected on the second verdict form were inconsistent with the answers on the first verdict form, and because the jury's note demonstrates an intent inconsistent with both verdicts, no means short of a new trial existed to reconcile the jury's "diverging views of the case."

This argument misperceives the trial court's limited authority to inquire into a jury verdict following the discharge of the jury. Maine Rule of Evidence 606(b) states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received.

This rule codifies the "settled doctrine of this State" that evidence of juror statements "may be offered only to show external misconduct of individual jurors or the exertion of outside influence upon the jury." *Marr v. Shores,* 495 A.2d 1202, 1204 (Me.1985) (citations omitted). "This rule excludes ... testimony from a juror about his or her own thought processes in arriving at the verdict. A juror cannot testify that the juror misunderstood the evidence or the instruction ... If the law were to allow a juror to testify to these matters having no verifiable external manifestations, no verdict would be safe." Field & Murray, *Maine Evidence* § 606.2 at 248–49 (4th ed.1997).

[¶ 7] Taylor does not allege that the jury's verdict was the product of external juror misconduct or an outside influence. Her basis for challenging the verdict—that the jury did not understand how to calculate compara-

---

**3.** Taylor had previously settled her claim against the property's owner, Coastal Bank, for $6,500. Because of this settlement, the court reduced the jury's $500 award pursuant to 14 M.R.S.A. § 163 (1980):

**Release of joint tortfeasors**

. . . .

Evidence of settlement with a release of one or more persons causing the injury shall not be admissible at a subsequent trial against the other person or persons also causing the injury ... If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settlement with or the consideration for the release of the other persons.

Taylor has not contested the court's decision to set off the settlement.

tive negligence using the verdict form—falls outside the limited inquiry into jury verdicts permitted by Rule 606(b). Nevertheless, Taylor urges us to engage in a fact-specific inquiry and to find that, despite the jury's discharge, it was "still together in the courthouse functioning as a jury" when it sent its note to the court. Such an inquiry would be a marked departure from our prior decisions and one that we deem neither wise nor desirable.

[¶ 8] In *Patterson v. Rossignol,* we articulated the public policy considerations that militate against permitting jurors to impeach their verdicts:

(1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; (5) the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.

245 A.2d 852, 857 (Me.1968). Subsequently, in *Cyr v. Michaud,* we determined that these policy considerations "apply to prohibit correcting a mistake in the recording of a verdict by using evidence, obtained after juror discharge, to establish that the jury misunderstood the verdict form provided to them." 454 A.2d 1376, 1383 (Me.1983).[4]

[¶ 9] The facts of *Cyr* are very similar to the facts of this case. In *Cyr,* the jury found that the plaintiff's total damages were $100,000 and, in response to the question, "[t]o what dollar and cents amounts do you deem it just and equitable having regard to the plaintiff, Mary Ann Cyr's fault, to reduce the total damages," awarded the plaintiff $80,000. *Id.* at 1379. After the jury's discharge, a third person informed the court that one of the jurors had indicated that the jury had intended to reduce the plaintiff's damages by $80,000 and thus only to award her $20,000. *Id.* at 1381. Subsequently, the defendant secured affidavits from all of the jurors stating that their verdict was to award the plaintiff $20,000. *Id.* at 1379, 1381. We found "that the policy considerations in favor of finality of a judgment and especially those in preventing juror harassment outweigh any benefit to be obtained by permitting inquiry into the juror's thought processes after the jury has been discharged." *Id.* at 1383. To this end, we observed:

[t]o admit affidavits of jurors to correct a mistake in recording the verdict would permit all losing parties to attack verdicts, thereby vitiating the finality and definitiveness of a judgment. Every dissatisfied litigant would be able to attempt to effectuate a revision of a verdict. To encourage parties to seek affidavits from jurors after they had been discharged unquestionably exposes jurors to harassment and to annoyance ... In addition, after being discharged, jurors may talk with persons who may express an approval or disapproval of the jury's verdict. After such discussion, the juror may wish he or she had voted differently in the deliberations of the jury. The juror may then be tempted to say that he did vote differently, and that either the foreman incorrectly recorded his verdict or that he misunderstood the verdict form.

*Id.* at 1383 (citations omitted).

[¶ 10] In this case, the Superior Court properly determined that grounds for a mistrial did not exist. When the jury's first verdict form revealed that it had misunderstood the court's instructions, the court acted within the bounds of its discretion by reinstructing the jury. Then, before excusing the jury after it returned the second verdict, the court gave both parties the opportunity to inquire further of the jury. Taylor made no further inquiry of the jury; nor did she

---

**4.** Other states have taken a wide variety of approaches to deciding whether to permit jury reassembly after discharge. *See* David J. Marchitelli, Annotation, *Propriety of Reassembling Jury to Amend, Correct, Clarify, or Otherwise Change Verdict After Discharge or Separation at Conclu-*sion of Civil Case, 19 A.L.R. 5th 622 (1994 & Supp.1997). In our view, this diversity makes manifest the impossibility of drawing a line which properly fits all of the points upon which parties may urge revisiting jury verdicts.

ask to approach sidebar and renew her request for a mistrial; rather, she chose to wait until the jury had left the courtroom to move for a mistrial. At that point, when the jury officer informed the court that the jurors wished to speak to it, the court agreed to receive a note from the discharged jury. In so doing, the court appropriately made sure that the jury's misgivings were not the product of an outside influence or of external juror misconduct, which pursuant to Rule 606(b) might have required a mistrial. Upon verifying that the jury's concern stemmed not from outside influence or from external juror misconduct, the court properly applied our decision in *Cyr* and declined to disturb the verdict. Throughout, the court acted well within its discretion.

### III.

[¶ 11] Taylor's motion for entry of a judgment conforming to the jury's intent is not a motion familiar to this Court. Inasmuch as we can discern, it represents an attempt to obtain relief from judgment pursuant to M.R. Civ. P. 60(b). We review the denial of relief pursuant to Rule 60(b) for an abuse of discretion. *New Maine Nat'l Bank v. Nemon,* 588 A.2d 1191, 1193–94 (Me.1991). Because *Cyr* prohibits "correcting a mistake in the recording of a verdict by using evidence, obtained after juror discharge, to establish that the jury misunderstood the verdict form provided to them," the trial court did not exceed the bounds of its discretion by not entering a judgment conforming to the jury's post-discharge note. *See Cyr,* 454 A.2d at 1383.

### IV.

[¶ 12] Taylor's motion to correct the "clerical error" of failing to enter a judgment consistent with the jury's intent misconstrues M.R. Civ. P. 60(a). Rule 60(a) states, in relevant part: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party...." This rule is limited to correcting clerical errors. *Daniel v. Palmer,* 580 A.2d 689, 689 (Me.1990). Taylor does not contend that the judgment entered by the court failed to reflect the second verdict form returned by the jury; as such, she has not stated a claim for relief under Rule 60(a). *See id.*

### V.

[¶ 13] Lastly, the Superior Court acted well within its discretion by denying Taylor's motion for additur.

The law is well established that the assessment of damages is the sole province of the jury, and the amount fixed must stand unless it is apparent from the record that the jury acted under some bias, prejudice or improper influence, or made some mistake of law or fact. We have noted that the trial court is in a far better position than an appellate court to make this determination. The trial court's denial of a motion for additur to a verdict ... will be reversed only if we determine that the decision was a 'clear and manifest abuse of discretion.' In reaching our determination, we consider the evidence in the light most favorable to the non-moving party....

*LeFay v. Coopersmith,* 576 A.2d 192, 195 (Me.1990) (citations omitted). Whereas we normally would evaluate the evidence presented at trial, in the light most favorable to Lapomarda, to determine if the Superior Court exceeded the bounds of its discretion by denying Taylor's motion, Taylor's failure to include a transcript of the trial proceedings in the record on appeal precludes us from doing so. Because *Cyr* dictates that we not examine the jury's post-discharge note, we lack any evidentiary basis on which to determine that the Superior Court exceeded the bounds of its discretion.

The entry is:

Judgment affirmed.