**Dermot and Emily HARVEY on behalf of Julian HARVEY, Plaintiffs**

v.

**MID–COAST HOSPITAL, Defendant**

No. CIV. 98–85–P–C.

United States District Court, D. Maine.

Jan. 8, 1999.

Terrance R. Duddy, Richard W. Mulhern, John N. Kelly, Kelly, Remmel & Zimmerman, Portland, ME, for Plaintiffs.

Robert O. Newton, Christopher D. Nyhan, Sigmund D. Schultz, Preti, Flaherty, Beliveau & Pachios, Portland, ME, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This is a medical malpractice action against Mid–Coast Hospital for the brain and neurological damage sustained by Julian Harvey in April of 1993. Plaintiffs in this action, Dermot and Emily Harvey ("the Harveys"), parents of Julian Harvey, have moved pursuant to Fed.R.Civ.P. 56 for summary judgment to dismiss Defendant Mid–Coast Hospital's affirmative defenses of assumption of the risk and comparative negligence. The Harveys' motion raises an issue of Maine law as to which the Court has found no decisive Maine precedent. Accordingly, the Court will grant the Harveys' motion.

## I. BACKGROUND

On April 17, 1993, nineteen-year-old Julian Harvey was discovered unconscious in his dormitory room by his fellow students at The Hyde School in Bath, Maine. Plaintiffs' Statement of Material Facts (Docket No. 12) at ¶¶ 1, 2. Rescue personnel were summoned, and Julian was transported by ambulance to Mid–Coast Hospital where he was treated in the emergency room. *Id.* at ¶ 2. Julian, who suffered from a bipolar psychiatric disorder, had been prescribed a medication called Tegretol. Blood tests confirmed that Julian had consumed a large quantity of the drug on April 17th. *Id.*

After being treated in the emergency room, Julian was admitted to Mid–Coast Hospital's intensive care unit under the care of James P. Rines, M.D. *Id.* ¶ 3. While in the

intensive care unit, Julian experienced seizures which developed into the condition known as *status epilepticus,* which is characterized as repeated seizures. *Id.* Dr. Rines was notified but was unable to control Julian's seizures. Plaintiffs' Statement of Material Facts ¶ 4. At some point during the series of seizures, Julian was transferred to Maine Medical Center where he was treated with the medication Versed which stopped the seizures. *Id.* ¶ 2, Exhibit 13. Julian sustained severe and permanent brain damage. *Id.* ¶ 5, Exhibit 14.

The Harveys filed a suit for medical malpractice on behalf of Julian on March 27, 1998, against Dr. Rines and Mid–Coast Hospital. They claim that the hospital was negligent in its treatment and supervision of Julian. Specifically, the Harveys claim that the hospital, through its agents and employees, were professionally negligent when they allegedly failed to respond to and treat Julian's seizure activity in a proper and timely fashion. Complaint (Docket No. 1) ¶ 12. In addition to a general denial of negligence, Mid–Coast Hospital asserted several affirmative defenses including assumption of the risk and comparative negligence. Mid–Coast Hospital's Answer (Docket No. 2).

At trial, the Harveys will attempt to show that the hospital nurses failed to timely notify Dr. Rines of the onset of Julian's seizures so that he could undertake timely and appropriate antiseizure treatment. Plaintiff's Statement of Material Facts ¶ 4. The Harveys's experts will testify that had Julian received timely and appropriate treatment the onset of *status epilepticus* would have been prevented or shortened in duration and Julian would not have sustained neurological damage. *Id.* ¶ 5.

Experts testifying for Mid–Coast Hospital will contend that Mid–Coast Hospital was not negligent and that the ingestion of the pills directly and proximately caused Julian's neurological brain damage. Defendant's Response to Motion for Partial Summary Judgment ("Defendant's Response") (Docket No. 13) at 6. Specifically, the experts will testify that Julian was more refractory to treatment because of the amount and type of drugs that he ingested and his injuries would have been likely even with the most aggressive treatment. *Id.* ¶¶ 4, 13.

## II. DISCUSSION

Summary judgment is appropriate when the record shows there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has come forward identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" which "it believes demonstrate the absence of a genuine issue of material fact," the adverse party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that Party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The Court will not, however, pay heed to "conclusory allegations, improbable inferences [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

### A. Assumption of the Risk

■ Mid–Coast Hospital has pled the affirmative defense of assumption of the risk. The theory that a plaintiff's negligence claim could be barred because he or she voluntarily assumed the risk was abolished in Maine with the adoption of comparative negligence principles. *See* 14 M.R.S.A. § 156; *Wilson v. Gordon,* 354 A.2d 398, 401–03 (Me.1976); *Austin v. Raybestos–Manhattan,* 471 A.2d 280, 287 (Me.1984). Accordingly, the Harveys' motion for summary judgment will be granted insofar as it asks the Court to dismiss any claim that Julian's voluntary assumption of the risk is an absolute bar to plaintiffs' recovery.

## B. Comparative Negligence

The Harveys' Motion for Partial Summary Judgment also calls upon the Court to dismiss, as a matter of law, Mid–Coast Hospital's affirmative defense of comparative negligence.[1] The Harveys contend that, as a matter of law, the principles of comparative negligence do not apply in medical malpractice cases so as to result in the apportionment of damages between a plaintiff who acted negligently *in causing an initial injury* and a health care provider that negligently treated the plaintiff for the injury. The Harveys' argument, as applied to this case, is that because Julian's attempt to commit suicide[2] provided only *the occasion* for the alleged negligent treatment by Mid–Coast Hospital, the evidence that Julian attempted suicide by purposefully ingesting Tegretol may not be presented to the jury as evidence of comparative negligence.

■ Cases regarding a plaintiff's negligence in medical malpractice actions can be divided, generally, into four categories. The first set of cases are those where the plaintiff fails to follow a physician's advice and instructions; the second set of cases are those where a plaintiff delays seeking or returning for medical attention; the third set of cases are those where a plaintiff has furnished false, incomplete, or misleading information to his or her physician; and the fourth set of cases are those where a patient's negligent or intentional conduct causes the occasion for the medical attention which is the subject of the malpractice action. *See* Madelyn R. Orr, *Defense of Patient's Contribution to Fault in Medical Malpractice Actions,* 25 Creighton L.Rev. 665, 676–690 (1992). The present motion raises the narrow question of whether a patient's conduct that provides only *the occasion for* medical attention, care or treatment which is the subject of a subsequent malpractice action may not be considered in assessing damages pursuant to contributory negligence principles under Maine law. This Court finds that there is no indication that the Maine Law Court would choose not to follow the rule established by the majority of courts that have considered the question. Accordingly, this Court holds that, as a matter of law, a jury may not consider events that occur before the medical treatment that are relevant only insofar as they explain that the plaintiff is responsible for the events that led to his medical treatment.

Although the Law Court has not answered the question presented by the Harveys' motion, case law from other states is replete with instances where a medical provider, charged with negligent treatment or care of a plaintiff, accuses the plaintiff of contributory negligence for behavior that occurred before the patient sought treatment. The majority of courts generally agree that evidence of the patient's negligent or intentional conduct that occurs prior to the negligent treatment and provides only the occasion for a subsequent malpractice claim is inapplicable to the assessment of damages between the patient and the negligent health care provider. *See Jensen v. Archbishop Bergan Mercy Hosp.,* 236 Neb. 1, 459 N.W.2d 178 (1990) (reversing and remanding for a new trial because although plaintiff's failure to lose weight may have been causally related to his injury, his conduct regarding his weight problem merely furnished an occasion or condition for the medical care which is the basis of the malpractice action and it was improper to instruct the jury to consider whether plaintiff had been contributorily negligent.); *Eiss v. Lillis,* 233 Va. 545, 357 S.E.2d 539, 543 (1987) (reversing and remanding for a new trial because jury had been instructed to consider that patient had negligently taken

1. Maine applies a comparative negligence rule whereby recovery by a plaintiff against a negligent defendant is denied if a plaintiff is found to have equal or greater fault or responsibility for the injury of which he complains. *See* 14 M.R.S.A. § 156. The rule further provides that where a plaintiff is found to have fault, but less than that of the negligent defendant, the damages recoverable are reduced to such extent as the jury thinks just and equitable in regard to the plaintiff's share in the responsibility for the damage. *See id.*

2. The parties agree that for purposes of this motion, Julian attempted suicide on April 17, 1997. Plaintiffs' Motion for Partial Summary Judgment (Docket No. 11) at 2; Defendant's Response to Summary Judgment (Docket No. 13) at 2.

aspirin along with heart medicine prior to the physician's alleged negligence as evidence of contributory negligence); *Owens v. Stokoe,* 115 Ill.2d 177, 104 Ill.Dec. 694, 503 N.E.2d 251, 254 (1986) (held that evidence of dental patient's failure to obtain second opinion, prior poor oral hygiene, and alleged refusal to permit X-ray to be taken of his teeth was insufficient to raise issue of contributory negligence because parasthesia was proximately caused by damage to the left interior alveolar nerve during surgery and conduct of patient did not prevent surgeon from properly performing surgery); *Durphy v. Kaiser Found. Health Plan of Mid–Atlantic States, Inc.,* 698 A.2d 459, 467 (D.C.Ct.App.1997) (holding that any negligence of plaintiff which occurred prior to the medical defendant's negligence did not constitute contributory negligence); *Fritts v. McKinne,* 934 P.2d 371, 374–75 (Okla.Ct.App.1996) (reversing and remanding for a new trial because the jury was instructed to consider plaintiff's drunk driving, which caused the accident for which he was subsequently negligently treated, as evidence of the plaintiff's comparative negligence in the malpractice action); *Bryant v. Calantone,* 286 N.J.Super. 362, 669 A.2d 286, 288–89 (1996) (holding that "[t]he pre-treatment health habits of a patient are not to be considered as evidence of fault that would have otherwise been pled in bar to a claim of injury due to the professional misconduct of a health professional"); *Yuscavage v. Jones,* 213 Ga.App. 800, 446 S.E.2d 209 (1994) (affirming trial court's refusal to permit the defendant from presenting evidence that plaintiff was drunk at the time of the accident and, thus, was comparatively negligent); *Martin v. Reed,* 200 Ga.App. 775, 409 S.E.2d 874, 876–77 (1991) (holding that a jury is not authorized to find that although the subsequent treatment and diagnosis did constitute malpractice, a recovery therefor is barred because the original car accident was caused by plaintiff); *Sendejar v. Alice Physicians and Surgeons Hosp., Inc.,* 555 S.W.2d 879, 885–86 (Tex.Ct.App.1977) (holding that because there was nothing to suggest that plaintiff was guilty of any type of negligence occurring simultaneously with or co-operating with the alleged medical malpractice of the defendants, the defense of contributory negligence was not applicable); *Matthews v. Williford,* 318 So.2d 480, 482–83 (affirming trial court because it ruled as a matter of law that the decedent's failure to quit smoking and not become overweight was not relevant to show that plaintiff was contributorily negligent); *Cheek v. Domingo,* 628 F.Supp. 149, (Dist.V.I.1986) (granting plaintiff's motion *in limine* and holding that the admission of evidence that plaintiff was in a fight which occasioned his need to receive the treatment subject of the malpractice action was barred because it occurred prior to the allegedly negligent treatment); *Lamoree v. The Binghamton General Hosp.,* 68 Misc.2d 1051, 329 N.Y.S.2d 85, 89 (N.Y.Sup.Ct.1972) (holding that evidence that decedent was negligent shall not go to contributory negligence because the tortuous acts of defendants were successive and independent of any act of the decedent before he was admitted to the hospital).

In medical malpractice cases where the patient's attempt to commit suicide occasioned the need for medical treatment which was the basis for a subsequent medical malpractice case, courts have held that the patient's actions were not legally significant once the malpractice of the medical defendant was established as the proximate cause of the plaintiff's injury. *See Bourne v. Seventh Ward General Hosp.,* 546 So.2d 197, 203–05; *Cowan v. Doering,* 215 N.J.Super. 484, 522 A.2d 444, 448–49 (1987); *Whitehead v. Linkous,* 404 So.2d 377, 379 (Fla.App. 1981). Hence, the rule followed by the aforementioned cases is that evidence of the plaintiff's negligence is not properly submitted to the jury where the plaintiff's negligent or intentional actions provide only the occasion for the subsequent negligent treatment.

Despite the aforementioned authority, courts have also held that evidence of a patient's negligence that provides the occasion for the negligent medical treatment subject of the malpractice action *is* properly considered by the jury in its assessment of the extent of that patient's recovery under comparative negligence principles. *See Gray v. Ford Motor Co.,* 914 S.W.2d 464, 467 (Tenn.1996) (responding to a certified question from United States Court of Appeals for

the Sixth Circuit that "the principles of comparative fault apply in Tennessee medical malpractice actions, so as to result in the apportionment of fault between the estate of a decedent who acted negligently in causing the initial injury, and a physician who acted negligently in the treatment of the decedent for that injury. The physician's liability will be limited to the percentage of the total damages attributed to his negligence."); *Berry v. Friday*, 324 Pa.Super. 499, 472 A.2d 191, 194 (1984) (stating that although case did not strongly favor the inference that the patient was contributorily negligent because he was overweight and smoked, even a slim possibility of contributory negligence was enough to present the issue to the jury); *see also Poulin v. Yasner*, 1997 WL 112778 (Conn.Super.Ct.).

■ As previously stated Maine's Law Court has not squarely addressed the narrow question presented by this motion. The Law Court has, however, considered the role of a plaintiff's negligence in medical malpractice cases where the plaintiff is negligent *during the course* of treatment. The Law Court stated long ago that it is the duty of a patient to follow the reasonable instructions of and submit to the reasonable treatment prescribed by his physician and, if he fails so to do and his negligence directly contributes to his injury, he cannot maintain an action for malpractice. *Merrill v. Odiorne*, 113 Me. 424, 94 A. 753, 753–54 (1915). Since then the Law Court has considered cases where patients are accused of negligence in the course of their treatment. Under Maine law, when assessing damages pursuant to comparative fault principles in medical malpractice actions, a fact finder must consider any evidence of a plaintiff's negligent or deliberate conduct as it relates to his or her failure to follow medical instructions or the refusal or neglect of prescribed treatment. *See McLaughlin v. Sy*, 589 A.2d 448, 450 (Me. 1991) (noting trial court's submission of verdict form questions to the jury concerning comparative negligence based on evidence of patient's delay in returning to the hospital after symptoms appeared); *Hauser v. H.N. Bhatnager*, 537 A.2d 599, 601 (Me.1988) (approving trial court's submission of plaintiff's negligence and comparative negligence instruction and affirming because, based on the evidence that plaintiff failed to keep a follow-up appointment, jury was not compelled to find plaintiff guilty in some degree of comparative negligence and could rationally conclude that plaintiff's actions did not cause her injuries); *Crosby v. Grandview Nursing Home*, 290 A.2d 375, (Me.1972) (approving the consideration of evidence regarding plaintiff's failure to purchase supportive shoes upon the advice of her physician but, nevertheless, holding that the plaintiff did not negligently contribute to her injuries and, therefore, her recovery was not barred). Accordingly, under Maine law a jury may limit or deny a plaintiff's recovery in a medical malpractice action when he or she is found to have acted negligently *in the course of* his or her medical treatment. Notwithstanding these decisions, the Law Court has not addressed the question of whether evidence of a plaintiff's pretreatment negligent conduct that *only provides the occasion* for negligent medical treatment can be presented to the jury in regard to its assessment of damages.

■ This Court believes that the Maine Law Court, if confronted with the subject question would agree with the majority of courts which have held that principles of comparative fault do not apply in medical malpractice actions so as to result in the apportionment of damages between a claimant whose own conduct causes the initial injury that provides the occasion for the medical malpractice and a health care provider who negligently treats the claimant for that injury. Such a decision is in accord with sound principles of social policy. "The improper or inappropriate imposition of the defense of [comparative] negligence can lead to the dilution or diminution of a duty of care." *Bryant*, 669 A.2d at 289. The Oklahoma Court of Appeals has stated the salient principle as follows:

> a physician simply may not avoid liability for negligent treatment by asserting that the patient's injuries were originally caused by the patient's own negligence. "Those patients who may have negligently injured themselves are nevertheless enti-

tled to subsequent non-negligent medical treatment and to an undiminished recovery if such subsequent non-negligent treatment is not afforded."

*Fritts*, 934 P.2d at 374 (quoting *Martin*, 409 S.E.2d at 877).

It would be anomalous to posit, on the one hand, that a health care provider is required to meet a uniform standard of care in its delivery of medical services to all patients, but permit, on the other hand, the conclusion that, where a breach of that duty is established, no liability may exist if the patients's own preinjury conduct caused the illness or injury which necessitated the medical care. This Court does not believe the Law Court would indulge that anomaly.

Hence, in this case, a jury may consider whether the ingestion of an overdose of Tegretol is the sole proximate cause of Julian's brain and neurological damage. The jury may also consider whether Mid–Coast Hospital failed to conform to the applicable standard of care and whether, if so, its subsequent malpractice was the sole or contributing proximate cause of Julian's injuries. Furthermore, Mid–Coast Hospital is permitted to present evidence of the fact of the amount of Tegretol found in Julian's body (as distinguished from the fact that *he* caused its presence) *for the purpose of disputing liability* by rebutting the contention that Mid–Coast Hospital's negligence was a proximate legal cause of Julian's injuries. It may be possible, depending on the evidence at trial, for a jury to reasonably conclude that, although Mid–Coast Hospital was negligent in the manner that the Harveys contend, Julian's brain and neurological injuries would have been sustained by him regardless of any negligence in the provision of his medical care, due to the amount of Tegretol ingested and the effect thereof. But that is a determination that may be made without reference to the fact that Julian voluntarily or negligently ingested the medication himself. This Court holds, in its prospective view of Maine law, that the jury is not to be permitted to find that although Mid–Coast Hospital's subsequent treatment did constitute malpractice which is a proximate cause of Julian's injuries, a recovery by the Harveys is barred, or may be reduced under the comparative fault doctrine, because the original ingestion of Tegretol was intentionally or negligently caused by Julian. Hence, that fact loses all relevance to the issues of liability and damages.[3]

**3.** The Court has seriously considered certifying the question presented by the Harveys' motion to the Supreme Judicial Court. In Maine, certification to the Supreme Judicial Court is authorized by 4 M.R.S.A. § 57, which provides in relevant part:

> When it shall appear to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there are involved in any proceeding before it one or more questions of law of this State, *which may be determinative of the cause,* and there are not clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as a law court may, by written opinion, answer.

See also M.R. Civ. P. 76(B)(a) (emphasis added). Under section 57, this Court may certify a question of state law to the Supreme Judicial Court if it finds that there is no clear, controlling state-law precedent. *See Nuccio v. Nuccio,* 62 F.3d 14, 17 (1st Cir.1995). In addition, certification is appropriate only if there is no dispute as to the material facts, and the Supreme Judicial Court's answer to the proposed state-law question will,

"in at least one alternative, be determinative of" the federal cause. *Lovell v. One Bancorp.,* 614 A.2d 56, 57 (Me.1992).

Here, it is unclear whether the Law Court would or would not intend comparative negligence principles to apply in a medical malpractice action so as to result in the apportionment of damages between a patient who negligently causes his or her injury and the health care provider who negligently treated the patient. There is no controlling state-law precedent on this question, and it raises important issues of state social policy best resolved by that court. Furthermore, there is no dispute as to material facts that must be resolved prior to answering the certified question.

Nonetheless, this question, due to its posture in the present case, is not certifiable under state law to the Law Court. The Statute and the rule governing certification in the state of Maine require that the Supreme Judicial Court's answer to the proposed state-law question will, "in at least one alternative be determinative of the federal cause." *See* 4 M.R.S.A. § 57, M.R. Civ. P. 76(B). Here, resolution of whether comparative negligence principles apply to a patient's pretreatment conduct may result in the dismissal of an affirmative defense but would not resolve, in

## III. CONCLUSION

Based on the foregoing, the Court **ORDERS** that the Harvey's Motion for Partial Summary Judgment be, and is hereby, **GRANTED**.

So ORDERED.

any alternative, the legal claim. However that question is resolved, the case must still proceed to trial for ultimate resolution of the questions of whether liability should be imposed and, if so, the extent of a recovery. Accordingly, because of the condition requiring determination of the cer-tified question to result in the resolution of the "federal cause" imposed by the Maine statute and rule governing certification, it is clear that the Law Court will not answer the certified question because it does not answer "a controlling question of law" in this case.